**MARTHA E. DODSON** and **PHILLIS DODSON**, both single women, v. **NATIONAL TITLE INSURANCE COMPANY**, a Florida Corporation, and **SARAH JANE DODSON**, also known as **SADIE J. DODSON**, a widow.

31 So. (2nd) 402                                June Term, 1947
July 25, 1947                                Special Division B

*T. H. Teasley* and *Hyzer & Padgett,* for appellants.

*Amos Benjamin and J. Lewis Hall,* for appellees.

TAYLOR, Associate Justice:

Martha E. Dodson and Phyllis O. Dodson filed a bill for declaratory decree against the National Title Insurance Company, a corporation, and Sadie J. Dodson, for the purpose of securing a judicial determination of the respective rights of the three Dodson ladies in certain funds in the hands of the National Title Insurance Company. Sadie J. Dodson is the widow and Martha E. Dodson and Phyllis D. Dodson are daughters by a prior marriage of the late Boyd H. Dodson, deceased.

The funds in question arose from the sale by Boyd H. Dodson and Phyllis O. Dodson of certain real estate in Dade County pursuant to an escrow agreement in which National Title Insurance Company was escrow holder. All the conditions of the escrow agreement, except the actual disbursement of the funds, were performed before the death of Boyd H. Dodson.

There is little controversy as to the material facts. The deed was placed in escrow by Mr. and Mrs. Dodson early in 1946. The escrow holder was to hold the deed, receive the purchase money and hold both until possession of the property was delivered to the purchasers on May 1, 1946, and then deliver the deed and disburse the funds. The notice of transfer of possession was not received until May 2nd and the deed filed for record on that date. Mr. Dodson died May 3rd, before the funds had been disbursed.

At the time of the delivery of the deed to the escrow holder Mr. and Mrs. Dodson executed a "closing statement" dated March 25, 1946, directing that the net proceeds of the sale be paid, one-half to Mr. Dodson and one-half to Mrs. Dodson.

On April 12th, Mr. Dodson wrote the escrow holder as follows:

"In connection with the sale of Lot 34 and Isle 34, Bella Vista Subdivision, Sunny Isles, to David Kovnat, Benjamin Kovnat and Maurice Kovnat, I wish to instruct you to issue

your check in the amount of $12,163.20, which represents the amount due me in this transaction, to Martha E. Dodson and Phyllis O. Dodson, whose address is Berwick, R. D. No. 1, Pennsylvania."

Testimony of the officer of the National Title Insurance Company handling the escrow shows that the letter above quoted was delivered to him personally. His testimony also indicates that he and his company were perfectly willing to disburse the funds any way Mr. Dodson desired but that they did not regard the instructions contained in the letter as irrevocable or as relieving them of the duty which they owed Mr. Dodson to remain subject to his orders with respect to these funds.

The moneys were never disbursed although checks were drawn by National Title Insurance Company on May 7th for the payment of one-half the money to Mrs. Dodson and one-half to apellants. These checks were never delivered.

The chancellor held that Mrs. Dodson was entitled to one-half of the funds in question and that the other half should be paid to the personal representative of the estate of Boyd H. Dodson, deceased.

In the foregoing statement of the case we have not mentioned various allegations, proof, and arguments with respect to the title of Mr. and Mrs. Dodson to the land conveyed, as to whether it was held as tenants by the entireties, was homestead, or was owned by Mr. Dodson but not as his homestead. We do not consider a determination of this involved question necessary or material. Our conclusion as to the title to the funds in question would be the same no matter how the title to the land had been held.

If the land was owned by the entirety, that estate was terminated before the husband's death as to the funds arising from the sale by the express agreement of both parties in the closing statement.

The income from, or the proceeds of, the sale of real estate held by the entirety is equally the property of the husband and the wife. It is held by the unity. Either one taking pos-

session holds for the benefit of both. That is the rationale of our prior decisions.

The holding in Merrill v. Adkins, 131 Fla. 478, 180 So. 41, to the effect that a husband could discharge a promissory note payable to both by accepting payment in nowise changed our holdings as to the nature of the estate as announced in English v. English, 66 Fla. 427, 63 So. 822, and in Ohio Butterine Company v. Hargrave, 79 Fla. 458, 84 So. 376, which latter cases have never been departed from and stand re-affirmed.

But such funds are the proper subject of contrast between husband and wife (708.09, F.S.A.) and they may provide by contract for termination of the estate by the entirety resulting in equal division of the personal property. That is the effect of the settlement agreement.

Or they may likewise divide the proceeds or profits received from the property while the property itself may be retained as an estate by the entirety.

If the land was not owned as tenants by the entirety Mrs. Dodson still had a valuable interest, either of homestead or dower, and the agreement executed by both husband and wife fixing the amount that she would receive from the sale was binding and enforceable.

The principal attack on the decree appealed from centers around that part of the funds originally allotted to Mr. Dodson and referred to in his letter to the escrow holder which is quoted above. Appellants assert that the facts enumerated show a completed gift inter vivos, vesting title to these funds in them.

This position is based largely upon the assumption that National Title Insurance Company owed a debt to Mr. Dodson. This court has repeatedly held that an escrow holder is a trustee. Tomasello v. Murphy, 100 Fla. 132, 129 So. 328; Ullendorff v. Graham, 80 Fla. 845, 87 So. 50; Chace v. Johnson, 98 Fla. 118, 123 So. 519. A trustee is not transformed into a debtor merely because he had partially executed the trust and nothing remains for him to do but disburse the trust funds.

Delivery, actual or constructive, is essential to the validity of a gift.

In the case of deeds and formal transfers under seal many courts hold that delivery of the instrument is sufficient delivery to meet the requirements of the rule. But:

"It is generally held, where a paper is not a deed, a sealed instrument, or a formal instrument purporting to pass title, but is only an informal instrument, such as a letter, order, or memorandum, that the instrument is ineffective as a gift without a delivery of the property. . . ." 24 Am. Jur., page 751. See note in 63 A.L.R. beginning on page 550.

In the case before us the instrument contained no words of gift or conveyance. It was a letter of instructions only. There was no agreement on the part of the escrow holder to transfer its obligations to the alleged donees. The evidence shows clearly that the escrow holder continued to recognize that its obligation was to Mr. Dodson, and any change in his instructions would have been accepted without question. Had delivery actually been made to the appellants it would have been done because of its obligation to Mr. Dodson and not because of any right on the part of appellants to demand or enforce such delivery.

The testimony of the officer of the escrow holder is not material as to his opinion of the rights of the parties; but it is very helpful in determining the relationships of the parties. It demonstrates that there was no agreement between Mr. Dodson and the escrow holder for a novation (if one were possible) in favor of appellants, or that Mr. Dodson completely surrendered control over the funds in question.

The actual preparation and signing of the checks occurred after the donor's death, and could not affect the rights of the parties.

In Foulke v. Hickman (Mo. App.), 259 S. W. 486, the Court, considering a case in which it was claimed that delivery to an attorney of written instructions to pay money to be thereafter collected by the attorney to a named individual effected a complete gift and therefore was irrevocable, said:

". . . A mere order or direction to a third party, whether oral or written, to deliver, unexecuted and withdrawn before execution, will not operate as delivery. The subject-matter of this alleged gift was the money ordered to be paid and not

the order. The order was a mere direction to pay which could be withdrawn at any time before delivery of the money, and did not, therefore take the place of actual delivery. . . ."

Our conclusion is that Mr. Dodson never, during his lifetime, lost domination over or the right to control the funds or the action of the escrow holder with respect to their disbursement. Conseqeuently there was no valid and completed gift. See Webster v. St. Petersburg Federal Savings and Loan Association, 155 Fla. 412, 20 So. (2nd) 400; Garner v. Bemis, 81 Fla. 60, 87 So. 426.

It follows that the Circuit Court was right in holding that the funds allotted to Mr. Dodson in the closing statement belong to his estate and should be paid to his personal representative.

The decree appealed from is affirmed.

THOMAS, C. J., BUFORD and BARNS, JJ., concur.