## SHELDON v. WATERS.
### No. 12262.

Circuit Court of Appeals, Fifth Circuit.
June 4, 1948.

S. E. Simmons, of St. Petersburg, Fla., for appellant.

Byron T. Sauls and R. M. Cargell, both of St. Petersburg, Fla., for appellee.

Before SIBLEY and LEE, Circuit Judges, and BORAH, District Judge.

SIBLEY, Circuit Judge.

Mrs. Hazel M. Waters, her husband Leslie A. Waters being in bankruptcy, filed in the bankruptcy case a petition to review a judgment of the referee that $3,660 in the hands of a depositary subject to orders of the court be turned over to the trustee in bankruptcy and administered as an asset of the estate. The active parties to the contention before the referee were the trustee, certain creditors of the bankrupt, and Mrs. Waters, but no pleadings appear in the record. In her petition for review Mrs. Waters asserts that she claims an interest in the money in that she was a tenant by the entirety with her husband of the real property out of which the money was derived by sale and also such tenant of the money, and that to administer it as her husband's asset in bankruptcy will unlawfully deprive her of her rights.

Appellee urges here that in a contest over such a right in Florida a wife must

be joined by her husband, so that her petition for review ought to have been disregarded and dismissed. This question was not made or decided in the district court. We do not think it has merit. This is not an original suit, but arises in the bankruptcy proceeding to which her husband is a party. It appears that his attorney was served with this petition for review. The bankruptcy case is essentially an equitable one, and it matters little whether he is a party here as petitioner or respondent. The statute allows any person aggrieved to make the petition for review, and she is aggrieved. 11 U.S.C.A. § 67, sub. c. The objection for want of parties is not good.

These are the facts as found by the referee: Between 1942, when Mr. and Mrs. Waters began residence in Florida, and April, 1945, they had only one bank account, a joint one, upon which both drew at their pleasure for their needs and expenses. They dealt extensively in Florida real estate, uniformly taking title thereto in the names of both as an estate by the entirety, and uniformly depositing the net proceeds of every sale in the joint bank account. In October, 1944, the husband entered the construction business and drew heavily on the joint account, depleting its balance of about $13,000. From the referee's statement of the evidence it appears that Mrs. Waters got knowledge of this on April 15th, 1945. At that time they sold a piece of Florida real estate held as tenants by the entirety for $16,000, but the proceeds were not put into the joint account but in a new account opened by Mrs. Waters in another bank. A few weeks later she turned over to her husband $7,900 of this money which she claimed to be a loan to him, but her claim in bankruptcy as a creditor was disallowed and abandoned. In July, 1946,[1] they entered into a written contract to sell to one Lucas another piece of land held as tenants by the entirety for $12,300, $5,000 being then paid. Mrs. Waters used this $5,000 to complete the construction of some houses on lots which she bought in her own name with money

from the proceeds of the sale in April, 1945. She later sold these houses at a profit and deposited the proceeds in her bank account and used them for her purposes. She bought these lots, built the houses, and sold them on her own initiative without interference or control from her husband.

It also appears without dispute that before the balance of $7,300 was paid on the land sold to Lucas in July, 1946, the bankruptcy intervened; and on Oct. 31, 1946, on the petition of Lucas, and on a stipulation signed by him, by Mr. Waters and Mrs. Waters, and by the trustee in bankruptcy, the referee ordered that the $7,300 be paid over to a depositary to stand in lieu of the property itself, that Mr. and Mrs. Waters execute a deed in accordance with their contract, and that the trustee disclaim any interest in the land; that two mortgages on the land be discharged out of the $7,300, and the remainder be held for "determination by this court of the rights of Leslie A. Waters, Hazel M. Waters, and the trustee in bankruptcy thereto."

On the facts which he found the referee concluded as a "conclusion of law" that the acts and conduct of the bankrupt and his wife established "an agreement, expressed or implied, to terminate their estate by the entirety in the property sold to Lucas" and that it followed that the balance of $3,660 on deposit was the separate property of the bankrupt to be administered by the trustee.

The district judge held this conclusion to be erroneous, but gave no reasons, and no directions as to what should be done with the funds. His decision is before us on this appeal.

Estates by the entirety in property conveyed to husband and wife are recognized in Florida as at common law, English v. English, 66 Fla. 427, 63 So. 822. So long as they exist, property so held is not subject to disposal by either alone, nor is the property subject to the debts of either, for neither is recognized as having any separate right. Newman v. Equitable Life

---

[1] The referee's finding is 1945, but other portions of the record show the date as 1946, such as the stipulation of the parties and order of the referee on it mentioned in the next paragraph.

Assur. Soc., 119 Fla. 641, 160 So. 745; Anderson v. Trueman, 100 Fla. 727, 130 So. 12. Such estates may exist in personalty, and the proceeds of sale of realty which was so held are ordinarily held in the same way. Dodson v. National Title Ins. Co., Fla., 31 So.2d 402. Divorce or death will end such a tenancy, and so may both parties by an agreement to do so. If they plainly agree on a division of the proceeds of a sale, their agreement will be effectuated and the agreed part of each will be his or her separate property. Dodson v. National Title Ins. Co., supra. But without an agreement neither alone can do anything to alter the tenancy of identifiable property so held. Logan Moore Lumber Co. v. Legato, 100 Fla. 1451, 131 So. 381; though the husband may accept payment in discharge of a note held by the entirety, the payment taking its place. Merrill v. Adkins, 131 Fla. 478, 180 So. 41.

▉ It will be noticed that the referee did not find that there was any express agreement, but rested his conclusion wholly on the course of conduct which he detailed. He states there was some discrepancy in the testimony of Mr. and Mrs. Waters about her use of the proceeds of the first sale and $5,000 from the second, but he did not find upon it. His conclusion was an inference from facts about which there is no dispute. He called it a conclusion of law and the district judge reversed it as such. We think it is one of fact, but since it does not grow out of any conflict of evidence or involve the credibility of witnesses, the ordinary rule that the fact findings of the referee or a master are to be upheld is of no force here. The proper conclusion from given facts can be made by the judge as well as by the referee. And on appeal to us we have the same power, especially since the judge and referee have disagreed. Stubbs v. Fulton Nat. Bank, 5 Cir., 146 F.2d 558, and cases cited on page 560, Note 1; Stewart v. Ganey, 5 Cir., 116 F.2d 1010, 1013; In re Gustav Shaefer Co., 6 Cir., 103 F.2d 237, 242.

We conclude there was some sort of agreement between Mr. and Mrs. Waters, for there was conduct by one inconsistent with the continuance of the tenancy by the entirety, acquiesced in by the other. There was indeed no sufficient agreement to alter their interests in any realty, for that would require a writing under the statutes of Florida, and there was no writing. And there was no written agreement about any division of any proceeds, as in Dodson v. National Title Ins. Co., supra. Yet it seems to us that there was a course of conduct showing purpose, made effective by acquiescence as it proceeded. Mrs. Waters, having no connection with the new business venture of Mr. Waters, learned on April 15, 1945, that he had withdrawn for his business $13,000 of their deposit of money held by the entirety. Whatever the technical consequence may be, she would naturally feel that he had taken $6,500 belonging to her. Her reaction was prompt. She opened a bank account of her own. They sold a piece of property for $16,000 and she put it all in her new deposit account, but gave him $7,900 back, her claim that it was a loan being disallowed. The $8,100 remaining she invested in her name, he acquiescing. If, as appears, she got $8,100 and he $7,900, her deficit was reduced to $6,400. When the second sale was made she took the whole $5,000 paid in cash and used it on her houses. He acquiesced and made no claim to the houses, and this shows consent, though the referee speaks of it as converting it to her own use. But there is nothing to show that this was done as a division of the proceeds of the last sale. It was not half of the net proceeds, for after paying the mortgages the net proceeds were only $8,660, and half would be $4,330. A more plausible inference is that they intended this $5,000 to go in further replacement of the deficit of $6,400, leaving the balance for final adjustment when the $7,300 should be paid. That $7,300, until paid and divided, was still proceeds of property held by entireties pending a contemplated but unaccomplished termination. The realty had been held by entireties till bindingly sold. It became then security for the purchase price. The $5,000 paid cash and the chose in action for $7,300 were thereupon held by the entirety, but the $5,000 was at once by joint consent applied as above stated, in the over-all purpose to adjust and settle their business as above indicated. Because this conclusion is natural, and is just, and

best explains the whole course of their conduct, we believe it is the truth.

■ In the Dodson case, supra [31 So. 2d 404], the court said: "The proceeds of, the sale of real estate held by the entirety is equally the property of the husband and the wife. It is held by the unity. Either one taking possession holds for the benefit of both. That is the rationale of our prior decisions. * * * But such funds are the proper subject of contract between husband and wife, Section 708.09, F.S.A., and they may provide by contract for termination of the estate by the entirety resulting in equal division of the personal property. That is the effect of the settlement agreement." The contract terminating the entirety in that case was in writing and expressly for equal division. Equality, however, though usually presumable, is not the only basis that may be agreed on, because the husband might be old or ill, so that the value of his prospect of joint enjoyment and ultimate survivorship might be much less than that of the wife. Other considerations might enter, as here, where the husband had gotten more than a fair share in other similar divisions. Their agreement made in good faith controls, and the husband can have as his separate property no more than the wife has agreed he shall.

The creditors here had no claim at all against the land or proceeds until there was a division fixing their debtor's separate part, for the property was not subject to their debts at all. On the filing of the bankruptcy petition the bankrupt estate became entitled to have only what Waters was entitled to as his separate part; but under the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a, it shall also include "all property in which the bankrupt has at the date of bankruptcy an estate or interest by the entirety and which within six months after bankruptcy becomes transferable in whole or in part solely by the bankrupt." Under the facts here at the date of bankruptcy the $7,300 chose in action arising from the sale of land held by the entirety was still so held, but under a tacit agreement, as we have said, to end its entirety by a division but with the division not accomplished. Nothing happened within six months to enable Waters solely to transfer this chose.

The balance after paying incumbrances, $3,660, still stands for division.

■ We therefore decide that the referee was justified in holding there was an implied agreement to terminate their holding by the entirety of this $7,300 debt, but we do not agree that it follows that the $3,660 left of it belongs to Waters. There is no evidence at all that any agreement was made as to how it should be divided, and it has not been appropriated by either with the consent of the other. It follows that the usual presumption of equal division as to this item of property should prevail, and half be awarded to Mrs. Waters and half to Waters and his trustee in bankruptcy. We so direct.

Judgment reversed with direction.