Proceeding in the matter of the estate of Angie C. Slawson, deceased, upon petition of Ethel S. Nevius, as administratrix of the estate of John T. Slawson, deceased, for distribution of the distributive share of petitioner's decedent in the estate of his predeceased wife. Preston K. Sheldon, individually and as administrator of the estate of Angie C. Slawson, filed answer, and from a judgment of the circuit court affirming an order of distribution, petitioner appeals.
Judgment reversed and cause remanded for proceedings consistent with opinion.
This is an appeal from a judgment of the Circuit Court of Polk County affirming an order of the County Judge of that county denying the petition of Ethel S. Nevius, as Administratrix of the estate of John T. Slawson, deceased. Said petition alleged that petitioner and Mabel S. Harris were the sole surviving heirs of John T. Slawson, and as such were entitled to receive his distributive share of the estate of Angie C. Slawson, the deceased wife of said John T. Slawson; that Angie C. Slawson died on December 26, 1945, and that John T. Slawson died eleven days later, on January 6, 1946; that Preston K. Sheldon, as the son and sole surviving heir at law of Angie C. Slawson, deceased, and administrator of her estate, claims the entire distributive assets of her estate, and intends to obtain an order of court granting the same to him. This petition, duly sworn to, was addressed to the County Judge and closed with an appropriate prayer for relief.
Preston K. Sheldon, a resident of New York, individually and as administrator of the estate of his mother, Angie C. Slawson, filed an answer to said petition, denying that Ethel S. Nevius and Mabel S. Harris were entitled to any distributive share in the estate of Angie C. Slawson, "for reason that John T. Slawson made a gift of all his interest in the estate of Angie C. Slawson, deceased, after her death on December 26, 1945, and prior to his death on January 6, 1946, and such gift was made to Preston K. Sheldon, son and heir-at-law of said Angie C. Slawson." (Italics ours.)
A stipulation by the respective parties was filed, which embraced the facts, but not the conclusions, stated in the petition and answer above referred to. The stipulation further stated that the estate of Angie C. Slawson consisted entirely of personal property, and attached as exhibits copies of two letters written by John T. Slawson to Preston K. Sheldon shortly after the death of Mrs. Slawson, also a copy of an undated letter referred to as a "memorandum," in the handwriting of Angie C. Slawson and addressed to her son by a former marriage, Preston K. Sheldon. Both the letters written by Mr. Slawson to his deceased wife's son, Preston K. Sheldon, during the few days intervening between her death and his own, evidenced his great bereavement and the sincere devotion and admiration which he had entertained for her during her lifetime, but we will omit from our quotations therefrom all language not pertinent to the issues involved in this case. No reply by Preston K. Sheldon to either letter is shown by this record; nor is it claimed that he ever made any reply.
The first letter was written on December 29, 1945, three days after Mrs. Slawson's death. In it Mr. Slawson mentions incidentally that he was "going on 88." Mrs. Slawson's age is not shown by the record filed here. In this letter Mr. Slawson said, inter alia, "Preston, she told me some months ago that I would find a memoranda of things in a certain hand bag that she wanted me to send to you if anything happened to her. I have hunted high and low and cannot find it. I thought perhaps she sent it to you. Please let me know."
The second letter, written by Mr. Slawson on January 3, 1946, among other things, says: "I found the enclosed statement from your mother after I wrote you, so I send it to you. When you find out what you wish to do you may return the papers." This letter contained no expression of intention or renunciation, and closed as follows: "I don't think of anything now, *Page 326 
if I do later I will let you know. Let me hear from you. Truly yours with love, J.T.S."
The "memoranda" referred to in the first letter, or the "statement" as it is referred to in Mr. Slawson's last letter, reads as follows: "Dear Preston: Thinking I should remind you if I should pass on ahead of John. He will sign off to my heirs. Send him legal paper to sign. Present address will be O.K. if he is here or mail will be forwarded. He would be in Winter Haven. I think Chamber of Commerce could locate him. My valuable papers are in the care of President Brown of Addison Bank. Pkg. for John included. Please send it to him. More information perhaps with papers. I wish to be taken to Watkins Glen. You will find plenty of means to pay all expenses. John should not pay any of the expense if he signs off to my estate as he will doubtless need what he has. He has been considerate of my welfare and you will be surprised I think at the settlement of my estate. Please take full responsibility for my expenses. Pay him for any expense here in Winter Haven as you will surely have plenty to do with. My love always to you and yours. Mother."
It will have been noticed that in his answer to the petition of Ethel S. Nevius, Preston K. Sheldon alleged that, after his mother's death and prior to the death of John T. Slawson, the latter "made a gift" of all his interest in the estate of his deceased wife to him, Preston K. Sheldon. But the "memorandum" written by Mrs. Slawson merely said that "if I should pass on ahead of John. He will sign off to my heirs. Send him legal papers to sign." And in his non-committal letter to Preston Sheldon of January 3, 1946, John T. Slawson merely said: "I found the enclosed statement from your mother after I wrote you, so I send it to you. When you find out what you wish to do you may return the papers." He did not say that he would sign anything or relinquish any right, but we think it is possible that if any "legal paper" had been sent to him to sign before his death three days later, giving or transferring his interest in his deceased wife's estate to her "heirs" he might have signed it, but that is mere guess work.
The use of the plural word "heirs" by Mrs. Slawson is explained by the agreed statement of facts, which shows that Mrs. Angie C. Slawson had another son, "who had not been heard from in fifteen years and who is presumed to be dead and to have left no children, or children of deceased children, surviving him." But, mother-like, Mrs. Slawson evidently held on to the hope that he might yet be alive and return home.
It does not appear from this record whether, in response to Mr. Slawson's non-committal letter to Preston Sheldon of January 3, 1946, the latter mailed any papers from New York to Mr. Slawson to sign, but if he did, it most probably reached Winter Haven after Mr. Slawson's death on January 6th. Eleven days previously Mrs. Angie C. Slawson had died without leaving any will, and when she died her husband became immediately vested with a child's part in her estate, whether real or personal. Our statute of descents and distributions settles that. See Florida Statutes 1941, F.S.A. § 731.23. This interest in his wife's estate was vested in John T. Slawson on December 26, 1945, not by will, but by operation of law.
The answer of Preston K. Sheldon to the petition for distribution filed by Ethel S. Nevius asked that said petition be denied because "John T. Slawson made a gift of all his interest in the estate of Angie C. Slawson, deceased, after her death on December 26, 1945, and prior to the death of John T. Slawson on January 6, 1946, and such gift was made to Preston K. Sheldon, son and heir at law of said Angie C. Slawson."
The County Judge evidently did not agree that the quoted allegations of a gift were sustained by the facts. On this, he was correct. Delivery, actual or constructive, is essential to the validity of a gift. Jones v. Ferguson, 150 Fla. 313, 7 So.2d 464; Dodson v. National Title Insurance Co., 159 Fla. 371, 31 So.2d 402, 405. In the latter case, this court said that: "In the case of deeds and formal transfers under seal many courts hold that delivery *Page 327 
of the instrument is sufficient delivery to meet the requirements of the rule. But: `It is generally held, where a paper is not a deed, a sealed instrument, or a formal instrument purporting to pass title, but is only an informal instrument, such as a letter, order, or memorandum, that the instrument is ineffective as a gift without a delivery of the property. * * *'" Citing 24 Am.Jur. 751, and note in 63 A.L.R., p. 550. Then this court added: "In the case before us the instrument contained no words of gift or conveyance. It was a letter of instructions only."
In 38 C.J.S., Gifts, § 15, p. 790, it is said that "a mere intention to give in the future, however well shown, gives rise to no obligation which the law will recognize or enforce." And on page 793, § 16, of the same volume it is said that, "To be effective, a gift must go into immediate and present effect. * * * The intention must be executed by a complete and unconditional delivery." On page 806, § 27 it is said delivery must be made during the donor's lifetime. See also Ross Co. v. Walker,44 Fla. 704, 32 So. 934.
So there was no valid gift shown in this case by John T. Slawson to Preston K. Sheldon, and renunciation was not pleaded.
But the County Judge held that "John T. Slawson did, by the two letters written by him to Preston K. Sheldon dated December 29, 1945, and January 3, 1946, and the memorandum enclosed in the letter of January 3, 1946, written by Angie C. Slawson, renounce his right to any inheritance in the estate of Angie C. Slawson, deceased," etc. So the County Judge based his judgment, not on a "gift," as pleaded, but on renunciation.
In the "memorandum" referred to, which was an undated letter from Mrs. Slawson to her son, Preston Sheldon, Mrs. Slawson stated that if she should "pass on ahead of John, He will sign off to my heirs. Send him legal paper to sign." But she was not absolutely sure that he would "sign," for later on in the "memorandum," referring apparently to certain funeral expenses that might be incurred if she predeceased her husband, she wrote: "John should not pay any of the expense if he signs off to my estate, as he will doubtless need what he has." (Italics supplied.)
The "memorandum" letter shows that Mrs. Slawson did not think that any renunciation would be in effect until her husband had "signed off to her heirs," or "to her estate," and therefore she requested her son to send Mr. Slawson a "legal paper" to sign, which, as we have seen, was never done. So the renunciation she planned did not take place. And in his letter to Mrs. Slawson's son, Preston, on January, 3, 1946, Mr. Slawson did not commit himself, or promise to sign anything; nor did he request that any legal paper be sent to him to sign. He merely said: "I found the enclosed statement from your mother after I wrote you so I send it to you. When you find out what you wish to do you may return the papers." He did not say what he, Mr. Slawson, would do if and when "the papers" were returned, and when, three days later, without having received or signed any paper whatever, he too passed away, the inheritance which had vested in him by operation of law upon his wife's death, eleven days previously, became vested in Ethel S. Nevius and Mabel S. Harris, his only heirs, likewise by operation of law. If Mr. Slawson ever had any intention to "sign off" to his wife's heirs, which was not clearly proven, such undisclosed intention certainly was not carried out or put into effect. There is no proof of any attempted renunciation or assignment by Mr. Slawson of his vested interest in his wife's estate, after her death, nor of any clear intention by him to renounce or assign such interest in the future. Indeed, as his interest had become fully vested in Mr. Slawson when he wrote the two letters, it would have required the execution and delivery by him of a formal document to Preston Sheldon in order to transfer and to vest in Sheldon the title or property right in and to Mr. Slawson's vested share of his wife's estate, even though it consisted entirely of personal property — mainly a bank deposit of some $3,800, according to the briefs. So Mrs. Angie Slawson knew what she was doing when she wrote the memorandum to *Page 328 
her son, in which she said "send him a legal paper to sign."
The exact question here presented has never before been presented to this court for decision. But the word "renunciation" is quite similar in meaning to the word "relinquish," and the legal meaning of the word "renunciation" is likewise quite similar to the definitions given in the standard dictionaries. See 54 C.J. 392, where one of the definitions is "a gratuitous abandonment or giving up of a right; an express waiver without consideration." See also 16 Am.Jur. 925, and Page on Wills, 2d Ed., sections 1235-1238, and 38 C.J.S., Gifts, § 15, 790.
The case of Adams v. Saunders, 139 Fla. 730, 191 So. 312, cited by appellee, involved an express renunciation by an executed deed, but the questions involved were based on the alleged mental incapacity of the grantor, and undue influence. So that case is not in point. Here there was, at most, a mere intention to renounce in the future by the signing of a "legal paper," which was never presented nor signed. This was not the equivalent of an actual and legally binding renunciation. So the cases decided in other States, cited by appellee, such as McDowell v. McDowell,141 Iowa 286, 119 N.W. 702, 31 L.R.A., N.S., 176, 133 Am.St.Rep. 170, dealing with an actual, positive and present renunciation, agreed to by the interested parties, even though verbally made, are not in point here.
In this case, there was, at most, a probable intention to renounce in the future by the signing of a "legal paper," which was never presented to nor signed by the deceased Mr. Slawson.
Counsel for appellant cite Garner v. Bemis, 81 Fla. 60, 87 So. 426; Dodson et al. v. National Title Insurance Co., 159 Fla. 371,31 So.2d 402; Bostian v. Milens, Mo. App., 193 S.W.2d 797, 170 A.L.R. 424, 435; Payton v. Monroe, 110 Ga. 262, 34 S.E. 305; 4 Page on Wills, 138-140.
Our conclusion is that the judgment appealed from should be, and it hereby is, reversed and the cause remanded for further appropriate proceedings, consistent with this opinion.
Reversed and remanded.
ADAMS, C.J., and CHAPMAN, THOMAS, BARNS, and HOBSON, JJ. concur.