### HOWARD v. HOWARD.

#### No. 41150.

Circuit Court, Duval County.

May 5, 1959.

Ralph E. Sistrunk, Jacksonville, for plaintiff.

W. Sperry Lee of Adair, Ulmer, Murchison, Kent & Ashby, Jacksonville, for defendant.

WILLIAM H. MANESS, Circuit Judge.

This cause is before this court upon plaintiff's petition for modification of the final decree herein. The facts are—

Plaintiff, Della Jane Howard, obtained a final decree of divorce in this court on December 12, 1938, by which her marriage to defendant, Charles Franklin Howard, was dissolved. The testimony before the special master on which the decree was based showed that defendant was at that time employed by the Standard Oil Company, earning a salary of $130 per month, traveling the state of Florida for his employer. By stipulation between the parties, approved in the final decree, defendant obligated himself to pay plaintiff $40 per month for alimony, $25 per month for the support of Betty Lucille Howard, the 16-year-old daughter of the parties, and $10.40 per month until a balance of $295 on the house of the parties (which was transferred to plaintiff) was paid in full. After Betty Lucille Howard married at 19 and the remaining $40 alimony payment became inadequate to meet her needs, plaintiff obtained employment at a cigar factory where she worked approximately 20 years until December 5, 1958, when she became incapacitated by reason of a heart ailment (angina pectoris) and will not be able to work again. She is now 62 years of age and must have regular medical and some nursing attention. Although she has not yet made application, she is eligible for social security benefits and receives a payment of $30 per month from the sale of the old home of the parties. But even with these sums, plaintiff has need of additional money and has demonstrated a sufficient change in her circumstances to warrant an order increasing defendant's payments of alimony, if his ability to do so has been shown.

Defendant was left with nothing but his job, clothing and personal effects after the entry of the final decree, and had to borrow $20 to get out of Jacksonville and get to his job. In 1939, about a year after the divorce was granted, defendant married his present wife, who also had no assets. On September 1, 1942, he was able to pur-

chase the commission agency for the distribution of Standard Oil products at Homestead, Florida, which he and his second wife have operated ever since, subject to cancellation on 30 days' notice. The contract is in his name alone but all the rolling stock and equipment used in its operation is owned by plaintiff and his wife as a tenancy by the entirety, and has been so held since its acquisition.

From the very beginning with this commission agency, the defendant and his second wife worked side-by-side building up the business. The two of them worked late at night frequently trying to keep up delivery of their products, particularly during World War II when gasoline stamps posed such problems in the industry. The present Mrs. Howard drove trucks during this time making deliveries of fuel to their customers, and both were up all night at times posting gas ration stamps on forms required by the Government to get their next shipment for distribution. In 1946, defendant suffered a heart attack, and his wife continued the business by herself until he was able to return to work. But since that time, the defendant has never been able to keep up the pace of work that he did before, and it has necessitated his hiring competent personnel to do certain phases of the work that he himself formerly did.

Prior to defendant acquiring the commission agency in Homestead, he and his new wife, out of what they could save from his salary from Standard Oil, purchased a lot in Miami Shores, upon which they built a residence on a part-time basis, using material acquired from old filling stations. This residence is owned as an estate by the entirety, and is valued at $22,500, subject to a $11,-272.18 mortgage. The house is rented out and he and his wife receive $140 a month rental on the premises, but depreciation, repairs and taxes on the property reduced the net income to $525.02 for 1958. The defendant and his wife, also through their joint efforts and sacrifices, were able to build a home in Homestead, together with several cottages surrounding the home, making the same into an 18-unit motel, having a current value of approximately $200,000, a picture of which the plaintiff's attorney filed in evidence. This motel last year showed a net loss of $3,388.61. This property is also owned as an estate by the entirety and is subject to a mortgage which has grown from $5,000 to $15,000, to $40,000 to $75,000, as it was built piecemeal from 1946 to date. The present balance is $71,614.56. The last mortgage was put on it in 1957. As is also shown in the testimony, defendant and his wife ventured into the vegetable farming business and lost $11,757.34 in 1958. The net income from the Standard Oil commission agency previously described was $5,391.68 in 1958. In connection with this agency, the defendant and his wife also run a wholesale auto accessory business on which they suffered a net loss of $11,402.17 in this past year.

The adjusted gross income or loss that defendant and his wife had for 1958 was a loss of $20,631.42 and their indebtedness increased $14,000 over 1957. While defendant and his wife own a variety of property, it is all mortgaged to the hilt and they have numerous other unsecured debts that were incurred through their business operations that must be paid off. There is no indication that they will have a net income for tax purposes in 1959, even though they intend to abstain from further farming operations.

No children have been born as a result of defendant's second marriage and apparently the present Mrs. Howard had none by any prior marriage, and both have been free of such responsibilities in their joint investments and business enterprises. As might be expected, in 1948 the second Mrs. Howard's health began to break, and she has suffered from a nervous condition which was difficult to diagnose, measles, broken ankle, death in her family and is no longer able to work any appreciable amount.

Neither defendant nor his present wife have inherited or won any money. Therefore, while the net worth of both defendant and his wife is undoubtedly at least $125,000 they have attained it at a considerable sacrifice in their health; and while, in spite of their debts and lack of income they live in apparent luxury, any additional payment by defendant to plaintiff would have to be obtained by the use of funds taken from the receipts of money from property owned or operated by defendant and his present wife as tenants by the entirety or from loans and the mortgage thereof.

Section 65.15, Florida Statutes, gives this court the authority to raise or lower amounts decreed or awarded for alimony as the changed circumstances and financial ability of the parties may reveal. However, the Supreme Court of Florida has said in case after case that where parties have by mutual agreement settled their differences as to the amount of alimony by compromise and the court has ratified the agreement in the final divorce decree, a *strong showing is required* to modify the terms thereof. See Webber v. Webber, 23 So. 2d 388; Vance v. Vance, 197 So. 128; Cohn v. Mann, 38 So. 2d 465.

The problem confronting the court in this case is not the question of the power of this court to enter an order increasing alimony payments to a former wife who has demonstrated both a need therefor and changed financial circumstances of the parties, notwithstanding the fact that the former husband shows no income but has adequate net worth *of his own*. This the court would do even if it required the former husband to borrow or liquidate some of *his* assets. In the case at bar, it clearly appears that the former

husband's only assets are held in an estate by the entirety and were in fact accumulated by the joint work and efforts of defendant and his present wife, "starting from scratch."

An extensive search for some authority concerning whether the net worth of the defendant and his second wife which is held in an estate by the entirety can be used as a basis for an increase of alimony fails to reveal any case directly in point. However, in discussing an estate by the entirety, Mr. Justice Thornal, in Winters v. Parks, 91 So. 2d 649, said at page 651—

"The required elements of unity of possession, interest and control peculiar to an estate by the entirety are so well known that an extensive discussion would not be justified. The estate is one peculiar to the relationship of husband and wife and is not available to people in any other relationship. Aside from unity of control, possibly the most important incidents of a tenancy by the entirety are that the survivor of the marriage, whether husband or wife, is entitled to the whole estate and that *any property so held is not subject to execution to satisfy the debts of either of the parties individually*. The common law recognized estates of this character in personal property as well as in realty and this court has in this respect followed the common law." (Italics added.)

Also, in Dodson v. National Title Insurance Company, 31 So. 2d 402, Mr. Justice Taylor held that "the income from or the proceeds of the sale of real estate held by the entirety is equally the property of husband and wife. It is held by the unity. Either one taking possession holds for the benefit of both. That is the rationale of our prior decisions." And, in the case of Hunt v. Covington, 200 So. 76, Mr. Justice Buford held, among other things, that an estate by the entirety is not subject to execution for the debts of the husband.

Based on the conclusions of the Supreme Court of Florida concerning the immunities of property held in an estate by the entirety from the separate claims or debts of a single tenant, this court concludes that the petition for modification of the final decree herein must be denied because of a failure to show assets *belonging to defendant* out of which increased payments of alimony can be allowed.

This does not mean that defendant can escape payment of, or avoid punishment for contempt for failure to pay, his existing obligation under said decree because this obligation is based on his agreement and stipulation to do so and where, as here, following his second marriage his income and efforts have been combined

with the efforts and work of such wife to create substantial net worth in a valid estate by the entirety, he will not be permitted to contend that his financial circumstances are not as good as they were when the final decree was entered.

Accordingly, it is ordered, adjudged and decreed that plaintiff's petition for modification of the final decree herein is denied.