411 So.2d 240 (1982)
Charles Thomas TANNER, Personal Representative of the Estate of Emma Tanner Childrey, Deceased, Appellant,
v.
Kenneth B. ROBINSON, Appellee.
No. 80-1571.
District Court of Appeal of Florida, Third District.
March 2, 1982.
Rehearing Denied April 13, 1982.
Hendricks & Hendricks and Ben E. Hendricks, Jr., Miami, for appellant.
Shutts & Bowen and Phillip G. Newcomm and Gregory P. Borgognoni, Miami, for appellee.
Before BARKDULL, SCHWARTZ and BASKIN, JJ.
SCHWARTZ, Judge.
Emma Tanner Childrey and her nephew, Kenneth B. Robinson, holders of individual accounts at the stock brokerage firm of Shearson Haydon Stone, Inc., opened an additional joint account with rights of survivorship. A few months later, Mrs. Childrey opened another individual account with a Ft. Lauderdale brokerage firm and executed a broad power of attorney, naming Robinson as her agent and attorney-infact.[1] *241 Mrs. Childrey and Robinson also opened still another joint account at the Ft. Lauderdale brokerage firm when it merged with Shearson Haydon Stone.
When Mrs. Childrey became critically ill, Robinson sent a letter to the broker requesting a transfer of the contents to their joint account. It did so. After her death, her personal representative sued to recover the securities then in appellee's possession, asserting, in part, that the transfer had been accomplished through undue influence. The trial court disagreed and entered judgment for Robinson. It referred in support of the result to a letter sent by Mrs. Childrey to the brokerage firm a few months before Robinson's letter arrived. Although the letter could not be located at time of trial, the testimony showed that it contained a direction by the decedent to transfer her individually held stock to the joint account. The court concluded that the letter had evinced Mrs. Childrey's intent to make a gift to Robinson although the formal transfer did not occur until his own letter arrived at the brokerage firm.
We affirm the judgment below on somewhat different grounds than those assigned by the trial court. Gries Investment Co. v. Chelton, 388 So.2d 1281 (Fla. 3d DCA 1980); Gatto v. Publix Supermarket, Inc., 387 So.2d 377, 380 at n. 4 (Fla. 3d DCA 1980).
Although we place no reliance on the power of attorney to sustain the transfer of Mrs. Childrey's individually held stock to the appellee,[2] we hold that her "missing" letter was alone and independently sufficient to convey the stock to Robinson on the rationale that her mailing it to the brokerage firm constituted a constructive or symbolic delivery of the stock in her individual account and thus completed a valid common law gift of those securities. Reynolds v. Maust, 142 Pa.Super. 109, 15 A.2d 853 (1940); 28 Fla.Jur.2d Gifts §§ 14-15 (1981), and cases cited; compare Dodson v. National Title Ins. Co., 159 Fla. 371, 31 So.2d 402 (1947) (letter of instruction to escrow holder insufficient to effect gift of escrow where holder continued to *242 recognize authority of original owner after receipt of letter, and, unlike present case, letter contained no words of intent to make gift). It does not matter  as the trial judge appears to have believed  that the letter did not result in a "delivery" of the stock as provided under Secs. 678.309, 678.313(1), 678.320(1), Fla. Stat. (1979).[3] It seems universally to be held that these provisions of the U.C.C. are not exclusive and do not undercut the validity of a gift of securities which is otherwise effective under common law standards. In Estate of Zaharion v. Security National Bank, 95 Mich. App. 70, 290 N.W.2d 84 (1980), the court said:
Specifically, we are asked to determine whether M.C.L. § 440.8309[4] ... is applicable to gratuitous inter vivos transfers of securities, thereby necessitating actual physical delivery of the stock certificates, or whether the aforementioned provision is inapposite to the case at bar. If so, then under the common law rule relating to inter vivos gifts, either actual or constructive delivery of the shares would suffice to effect a completed gift, assuming that the remaining elements of a gift inter vivos are present.
* * * * * *
We conclude that the common law rules relative to such transfers remain undisturbed by M.C.L. § 440.8309. As such, we hold that an inter vivos transfer by gift of any interest in securities is accomplished by either actual or constructive delivery of the same, where donative intent is also present, and where acceptance by the donee may be presumed or is proven directly... .
290 N.W.2d at 85. Accord, Ashley v. Ashley, 482 Pa. 228, 393 A.2d 637 (1978); see, Fidelity & Casualty Co. of New York v. Key Biscayne Bank, 501 F.2d 1322 (5th Cir.1974); see also, In re Estate of Wintermann, 492 S.W.2d 763 (Mo. 1973).
Affirmed.
BASKIN, Judge (specially concurring).
Although I agree that affirmance is appropriate, I strongly disagree with the majority's reliance on Mrs. Childrey's missing letter as the foundation for decision. Her letter cannot be considered a gift of securities under either the U.C.C. or common law because elements necessary to show delivery are absent.
Mrs. Childrey's letter did not constitute a gift under the U.C.C. because sections 678.309, 678.313(1), and 678.320(1), Florida Statutes (1979) require that appropriate entries be made in the corporate books, and it is clear those entries were not made following the firm's receipt of her letter.
*243 Mrs. Childrey's letter did not establish a gift under common law either. Common law also requires delivery before a gift is valid. Mrs. Childrey's absent letter was inadequate to establish a gift under common law because Mrs. Childrey maintained her joint interest in the account. Without a surrender of her dominion and control, Kuebler v. Kuebler, 131 So.2d 211 (Fla. 2d DCA 1961); Eulette v. Merrill Lynch, Pierce, Fenner, & Beane, 101 So.2d 603 (Fla. 3d DCA 1958), divestiture or delivery could not occur. Cf. Crossman v. Naphtali, 160 Fla. 148, 33 So.2d 726 (1948) (no gift of savings account); Dodson v. National Title Insurance Co., 159 Fla. 371, 31 So.2d 402 (1947) (no gift of escrowed deed); Webster v. St. Petersburg Federal Savings & Loan Association, 155 Fla. 412, 20 So.2d 400 (1945) (no gift of retained certificates). The absence of proof of donative intent, delivery, and acceptance precludes a finding of common law gift. Lowry v. Florida National Bank of Jacksonville, 42 So.2d 368 (Fla. 1949); Wood v. McClellan, 247 So.2d 77 (Fla. 1st DCA 1971).
It is therefore apparent that the question answered by the majority, that is, whether a common law inter vivos gift of securities may be established when U.C.C. requirements have not been met, is not ripe for decision in this lawsuit because even under common law, no delivery occurred. In the majority's eagerness to extend the rule announced in Estate of Zaharion v. Security National Bank, 95 Mich. App. 70, 290 N.W.2d 84 (1980) to Florida,[1] it has overlooked the fact that the making of a gift involves a relinquishment of ownership. Mrs. Childrey's letter merely adds Robinson to the account but does not relinquish her interest. Considered by itself, it does not constitute a gift.
A transfer did take place, however, in response to Kenneth Robinson's letter. See Maxcy v. Commissioner of Internal Revenue, 441 F.2d 192 (5th Cir.1971). An examination of the power of attorney, when read in conjunction with Mrs. Childrey's letter, reveals that it conferred powers sufficient to permit Kenneth Robinson to make a gift to himself.
In determining the authority conferred upon the agent by the terms of the writing expressing it, not merely that writing itself, but letters of the principal to the agent with reference to the execution of the business confided to the agent's care are to be considered, and this whether such letters amount to a modification of the agreement or the conferring of new and additional powers.
2A C.J.S. Agency § 151(c) (1972). Testimony established that in her letter[2] to the stock brokerage firm, Mrs. Childrey sought to transfer stock into the account she held jointly with Kenneth Robinson. That testimony supports the trial court's conclusion that Mrs. Childrey intended to transfer the stock and supplies the aid in construing the power of attorney which was absent in Hodges v. Surratt, 366 So.2d 768 (Fla. 2d DCA 1978), cert. denied, 376 So.2d 76 (Fla. 1979) and Johnson v. Fraccacreta, 348 So.2d 570 (Fla. 4th DCA 1977).
The trial court correctly held that Kenneth Robinson's letter transferring Mrs. Childrey's stock to his individual account was within the authority conferred by the power of attorney. On this basis alone, I agree to affirm the judgment entered by the trial court.
NOTES
[1] The document stated in part:

FULL TRADING AUTHORIZATION WITH PRIVILEGE TO WITHDRAW MONEY AND/OR SECURITIES
GENTLEMEN:
THE UNDERSIGNED HEREBY AUTHORIZES KEN ROBINSON (WHOSE SIGNATURE APPEARS BELOW) AS HIS AGENT AND ATTORNEY IN FACT TO BUY, SELL (INCLUDING SHORT SALES) AND TRADE IN STOCKS, BONDS, OPTIONS AND ANY OTHER SECURITIES AND/OR COMMODITIES AND/OR CONTRACTS RELATING TO THE SAME ON MARGIN OR OTHERWISE IN ACCORDANCE WITH YOUR TERMS AND CONDITIONS FOR THE UNDERSIGNED'S ACCOUNT AND RISK AND IN THE UNDERSIGNED'S NAME OR NUMBER ON YOUR BOOKS. THE UNDERSIGNED HEREBY AGREES TO INDEMNIFY AND HOLD YOU HARMLESS FROM AND TO PAY YOU PROMPTLY ON DEMAND ANY AND ALL LOSSED [sic] ARISING THEREFROM OR DEBIT BALANCE DUE THEREON.
YOU ARE AUTHORIZED TO FOLLOW THE INSTRUCTIONS OF KEN ROBINSON IN EVERY RESPECT CONCERNING THE UNDERSIGNED'S ACCOUNT WITH YOU, AND MAKE DELIVERIES OF SECURITIES AND PAYMENT OF MONEYS TO HIM OR AS HE MAY ORDER AND DIRECT. IN ALL MATTERS AND THINGS NECESSARY OR INCIDENTAL TO THE FURTHERANCE OR CONDUCT OF THE ACCOUNT OF THE UNDERSIGNED, THE AFORESAID AGENT AND ATTORNEY IN FACT IS AUTHORIZED TO ACT FOR THE UNDERSIGNED AND IN THE UNDERSIGNED'S BEHALF IN THE SAME MANNER AND WITH THE SAME FORCE AND EFFECT AS THE UNDERSIGNED MIGHT OR COULD DO.
* * * * * *
[2] This is because, as was held in Hodges v. Surratt, 366 So.2d 768 (Fla. 2d DCA 1978), cert. denied, 376 So.2d 76 (Fla. 1979) and Johnson v. Fraccacreta, 348 So.2d 570 (Fla. 4th DCA 1977), such a power does not confer authority to transfer the principal's property to the agent himself.

Moreover, one may not read that authority into the power's unambiguously contrary terms by reference to an entirely separate document, the decedent's letter to her broker. The text which may be cited for that proposition states only that the agent's authority is to be determined by considering "not merely [the power] itself, but letters of the principal to the agent [e.s.] with reference to the ... business confided to the agent's care... ." 2A C.J.S. Agency § 151(c) (1972). Since the letter in question was not to the agent, Robinson, but to a third party, this principle simply does not apply here.
[3] Sec. 678.309, Florida Statutes (1979) provides:

An indorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears or if the indorsement is on a separate document until delivery of both the document and the security.
Delivery to a purchaser occurs, according to Sec. 678.313(1), when:
(a) He or a person designated by him acquires possession of a security; or
* * * * * *
(c) His broker sends him confirmation of the purchase and also by book entry or otherwise identifies a specific security in the broker's possession as belonging to the purchaser; or
* * * * * *
(e) Appropriate entries on the books of a clearing corporation are made under s. 678.320.
Sec. 678.320(1) states:
(1) If a security:
(a) Is in the custody of a clearing corporation or of a custodian bank or a nominee of either subject to the instructions of the clearing corporation; and
(b) Is in bearer form or indorsed in blank by an appropriate person or registered in the name of the clearing corporation or custodian bank or a nominee of either; and
(c) Is shown on the account of a transfer or pledgor on the books of the clearing corporation;
then, in addition to other methods, a transfer or pledge of the security or any interest therein may be effected by the making of appropriate entries on the books of the clearing corporation reducing the account of the transferor or pledgor and increasing the account of the transferee or pledgee by the amount of the obligation or the number of shares or rights transferred or pledged.
[4] Identical to § 678.309, Fla. Stat. (1979).
[1] Florida courts have not decided whether the U.C.C. supplants common law pertaining to the inter vivos gift of securities. The holding described by the majority as "universal" appears to be supported solely by the Michigan appellate court in Estate of Zaharion v. Security National Bank, supra.
[2] If Mrs. Childrey's letter fell within the definition of hearsay, section 90.801(1)(c), Florida Statutes (1979), it would have been admissible as a statement against her interest. § 90.804(2)(c), Fla. Stat. (1979). However, its use as an expression of her intent rather than as a transfer of the stock precludes the objection on that ground. § 90.803(3)(a)(1), Fla. Stat. (1979).