448 So.2d 1197 (1984)
Mary D. PANZIRER, Appellant,
v.
DECO PURCHASING & DISTRIBUTING CO., INC., Leona M. Helmsley, Ruth A. Panzirer, Florida National Bank at Orlando, N.A., Harold A. Ward, III, As Successor Personal Representative of Jay Robert Panzirer, Appellees.
No. 83-719.
District Court of Appeal of Florida, Fifth District.
April 19, 1984.
*1198 Russell Troutman of Troutman, Parrish Williams & Blankenship, P.A., Winter Park, for appellant.
C. Brent McCaghren of Winderweedle, Haines, Ward & Woodman, P.A., Winter Park, for appellee Ward.
Davisson F. Dunlap and Robert L. Young of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, for appellees Deco, Helmsley and Ruth Panzirer.
No appearance for Fla. Nat. Bank.
ORFINGER, Chief Judge.
When Mary Panzirer, the appellant here, resigned as the personal representative of her late husband's intestate estate, she filed a final accounting. The successor personal representative filed objections, contending that appellant had not accounted for the contents of a securities account which the decedent had owned at his death. It was Mary's position, however, that her husband had made a valid gift to her of a joint interest in the securities account before his death, so that upon his death it belonged to her by right of survivorship. On trial of the objections, the trial court held that although decedent had possessed the donative intent to transfer his individual account to a joint account with the wife, no effective gift had been made. The wife appeals, and we reverse.
Jay Panzirer died of a heart attack on March 31, 1982, at the age of 40. Approximately a year earlier he had opened an individual securities account with a brokerage firm now known as Shearson/American Express, Inc. At the time of his death the bulk of the account consisted of Shearson Daily Dividend, Inc., a money market account, and was worth $68,008.21. Included in this total were fifty shares of stock worth $775.00, which Panzirer had ordered sold several weeks prior to his death, but the sale of which was not effected until after he died.
On or shortly before March 25, 1982, Panzirer called Frank Grasso, his account executive at Shearson, and told Grasso that he wanted to transfer his entire account to a joint account with his wife, appellant Mary Panzirer. Grasso informed him that to accomplish this he (Grasso) would need a *1199 signed and notarized authorization letter from Panzirer and a new standard Shearson Customer Agreement form signed by both Panzirer and his wife. Grasso sent the customer agreement form to Panzirer.
On March 30, 1982, one day before Panzirer's death, Grasso received a signed, notarized letter of authorization together with the signed customer agreement form. Upon receipt of these documents Grasso placed them in his pending file folder in his desk drawer. Although informed of Panzirer's death, Grasso several days later obtained his branch manager's approval of the documents and sent the papers to New York for processing. The joint account was then opened and Mrs. Panzirer ultimately withdrew the contents of this account and transferred the funds to another account which she had opened with Shearson in her own name.
The personal representative of Jay Panzirer's estate, sought to recover the value of the brokerage account on the theory that no transfer had been accomplished prior to Panzirer's death, and that the entire account was an asset of the estate on the date of Jay Panzirer's death. The trial court held that Panzirer possessed the donative intent to consummate the gift to his wife, but that the other elements of a gift had not been shown, and thus found that the account in question was an asset of decedent's estate.
We agree with the trial court that the evidence clearly shows that donative intent existed. In addition to his conversations with Grasso, it was also shown that Panzirer was aware of his serious heart condition. On March 26, 1982, he and his wife entertained some friends and during the party he told them of his recent medical examination in Boston and of his poor outlook, and stated that he had completed arrangements to take care of his wife and son Craig, if anything happened to him.
In holding that the other elements of a completed gift were not shown, the trial court relied on Dodson v. National Title Insurance Company, 159 Fla. 371, 31 So.2d 402 (1947). There, the court found no completed gift in a letter of authorization to a title company requesting a certain manner of disbursement of escrow funds after a real estate closing. In explaining its holding, the court stated:
Delivery, actual or constructive, is essential to the validity of a gift.
In the case of deeds and formal transfers under seal, many courts hold that delivery of the instrument is sufficient delivery to meet the requirements of the rule. But: "It is generally held, where a paper is not a deed, a sealed instrument, or a formal instrument purporting to pass title, it is only an informal instrument, such as a letter, order, or memorandum, that the instrument is ineffective as a gift without a delivery of the property ..." [citations omitted].
Id. at 405.
Dodson, however, is distinguishable because there was no intent on Dodson's part to create a joint account, but instead, he had requested that all his share of the funds be disbursed to others, and no delivery had taken place at his death. But the rule of law requiring "delivery" of personal property is not literally applied when the intention of the donor is to create a joint interest between the donor and donee in a securities or bank account. In Spark v. Canny, 88 So.2d 307 (Fla. 1956) (en banc) the supreme court addressed the problem of delivery with respect to an inter vivos establishment of a joint bank account, with right of survivorship. There, the court said:
It is true, as contended on behalf of Mrs. Canny, that the rules relating to gifts inter vivos cannot be strictly and literally applied in determining whether a joint bank account with right of survivorship has been established. Thus, the very nature of a joint bank account is such that one essential element of a gift inter vivos is missing  that of surrender of dominion and control by the donor  since each party has an equal right to withdraw the funds on deposit ... Nor is the rule as to "delivery" of the gift applicable in this situation. This is so *1200 because the thing given is not the money, in specie, on deposit in the joint bank account; it is a gift of an interest in the funds on deposit equal to that of the donor. But we think that the third essential of a gift inter vivos  that of donative intent  is just as relevant to the question here under discussion as it is in cases involving the establishment of a bank account by a person with his own funds in the name of another... . or in the establishment of a joint bank account by a husband in his and his wife's names ... [citations omitted].
Id. at 311.
Other courts have recognized constructive or symbolic delivery as satisfying the "delivery" requirement of a valid gift when a joint bank account or a joint securities account is created between the donor and the donee. Thus, in Tanner v. Robinson, 411 So.2d 240 (Fla. 3d DCA 1982) the court held that a letter from the decedent to her stockbroker directing the transfer of the securities in her individual account to a joint account with her nephew constituted a constructive or symbolic delivery of the stock thus completing a valid gift of those securities. Similarly, in Green v. Green, 314 So.2d 801 (Fla. 3d DCA 1975), cert. denied, 336 So.2d 600 (Fla. 1976) the court held that the required element of delivery by surrender of dominion and control is satisfied where the nature of the gift is a joint fund, if there exists a present intention that each party shall have a present, equal right to that fund. See also, Liebler v. Liebler, 413 So.2d 1246 (Fla. 3d DCA 1982).
Here, the stockbroker testified, without contradiction, that Panzirer wanted his securities account transferred to joint ownership with his wife, and that Panzirer had done everything required of him to effectuate that transfer. The fact that the stockbroker took six days to perform the necessary paperwork internally, just to accomplish a journal transfer from the single account to the joint account should not be a basis for defeating the expressed donative intent of Panzirer and the submission of the only documentation required of him because he died before the broker got around to doing the in-house paperwork. The donative intent was present, there was constructive or symbolic delivery of the assets of the account and the donee accepted the gift as indicated by her exercise of control over the funds.
Wood v. McClellan, 247 So.2d 77 (Fla. 1st DCA 1971) is inapposite. There, the decedent submitted to the savings and loan association the required forms to transfer his individual account to a joint account with his daughter, and as here, it was necessary that a new account be opened and the old one closed. The association was specifically instructed not to close the old account until December 29th so that interest for the preceding six months period would be paid. Decedent died on December 23rd and the court correctly held that no completed gift was made before his death. Those are not the facts here, because Panzirer's intent was for the transfer to take place immediately. It was not Panzirer who caused the delay in the paperwork.
Appellee contends that Shearson was Panzirer's agent for effecting the transfer, and that Panzirer's death revoked that agency. A similar situation was addressed in White v. Bank of America National Trust and Savings Association, 53 Cal. App.2d 838, 128 P.2d 600 (1942). Adeline Soares had requested the bank to convert her individual account to a joint account with herself and Maria and David Torres. All three had previously signed and returned signature cards to the bank, and on a Friday evening, because Soares was ill, a bank employee visited her home where she signed a withdrawal order and delivered it and her passbook to the bank employee. This was done after banking hours and the bank did not reopen until the following Monday. Mrs. Soares died on Sunday and the executrix of her estate contended that the funds in the account were properly assets of the estate because no transfer had been made prior to her death. In *1201 rejecting the argument the appellate court said:
That decedent intended to transfer a joint tenancy interest in her account to the Torres' by way of gift is plain from her entire course of conduct ... Certainly before her death she had done everything within her physical power to complete the gift. She had procured and delivered to the bank the joint account card duly signed, and she had delivered to Reece [the bank employee] her bank book and a withdrawal order with instructions to have the account transferred on the books of the bank to a joint tenancy account.
All that is necessary to a completed gift of personal property is the delivery, actual or symbolic, to the donee or to another for his benefit with the intent to vest title in the donee... . If the decedent, when she delivered the bank book and withdrawal orders to Reece intended thereby to transfer to the Torres' a joint tenancy interest in her account ... the gift was accomplished at that time. When the clear intention of the donor to make a gift can be carried out without doing violence to the established principles of law, the court should not seek highly technical reasons for defeating the gift.
During the hearing on the objections, the estate presented a handwriting expert who testified that the signatures on the two documents received by Grasso were not the signatures of Jay Panzirer. However, in the order appealed from, the trial court specifically "reach[ed] no conclusion regarding the testimony of the handwriting expert." What we have said here depends, of course, on the authenticity of those documents and for the purposes of this opinion we have assumed that the signatures are genuine. On remand, the trial court must necessarily reach a conclusion on that issue.
Because Jay Panzirer clearly had donative intent to immediately create a joint account with his wife, when he delivered the signed and notarized letter of authorization and the signed customer's agreement to the stockbroker before his death, there was constructive or symbolic delivery of the contents of the account and a valid inter vivos gift of a joint interest in the account was made at that time. Jay Panzirer could have done nothing more, and his unfortunate death before the stockbroker could complete an internal journal transfer should not defeat the clearly intended and executed gift.
The portion of the order relating to the "Shearson/American Express, Inc. account" is reversed and the cause is remanded to the trial court for further proceedings consistent herewith.
REVERSED and REMANDED.
FRANK D. UPCHURCH, Jr., and SHARP, JJ., concur.