**IRENE DAY FRANK, et al., v. C. F. EELES, et al.**

13 So. (2nd) 216                               January Term, 1943
May 4, 1943                                              Division B

*Herbert F. Fuller,* for appellants.

*J. U. Gillespie,* for appellees.

THOMAS, J.:

The plaintiffs, daughters of one William Thomas Day, deceased, joined by their husbands, prayed for a decree declaring that a resulting trust existed in certain property "in favor of the Estate of William Thomas Day" and that the defendants,—some of them were the executors of the estate of Ella B. Day; others the principal beneficiaries under her will—were trustees of said estate and held "the title and possession of all of said property in trust for the said Estate of William Thomas Day. . . ."

The claim to this relief was founded upon the alleged history of the relationship of William Thomas Day and his wife, Ella B. Day, and the manner of acquiring and handling the property involved in this litigation. These parties were married, so the bill alleges, before any of the property was acquired and at the time of the former's death title to all of it was held by the latter. William Thomas Day was the father of the plaintiffs Irene Day Frank and Corrinne Day Lambie. Although not shown in the bill it was developed in the testimony that their mother and William Thomas Day had been divorced long ago and that he married Ella B. Day more than thirty years before his death. We are not informed what property he owned at the time of the union, but she had none. While she was untrained and earned no money during their married life, he was a locomotive engineer, steadily employed and possessed of good business judgment. During their life together an estate of modest proportions was accumulated.

In July, 1940, he died leaving a will, executed in 1931, simply providing that "After all my lawful debts are paid and discharged, I give and bequeath to Ella Bane Day all my property both real and personal." Four months later Ella B. Day died and by her will executed a few days before her death, she gave and bequeathed her estate "except such personal things as I may have of my own, or my late husband's things that would only be cherished by my family" to "the Palmetto Street Methodist Church in New Smyrna Beach, Florida, . . . and the Methodist Children's Home in Enterprise, Florida, . . . ." The excepted property was left to the plaintiffs Irene Day Frank and Corrinne Day Lambie and to one Mrs. Lucy Dulaney Horner.

The accumulated property consisted of real estate, money deposited in a postal savings account, household goods, an automobile, some cash and several government bonds. Most of the real estate with which we are concerned had been conveyed to her; one parcel to both creating an estate by entireties. The postal savings account bore her name as did the government bonds. She was also said to have held in her name title to the automobile and the household goods and to have had possession of a small amount of cash. It was charged that the property to which we have referred represented the bulk of his earnings and his savings since his marriage to Ella B. Day. The plaintiffs asserted that all this property was held by her for the principal purpose of convenience because of his repeated absence from home necessitated by his vocation, but that he maintained supervision over it, she, meanwhile, recognizing his ownership. Finally, it was alleged that the two had agreed that in the event he "should first depart this life" she "would make a Last Will and Testament wherein and whereby [she] would will, devise and bequeath the said property to the . . . daughters . . . plaintiffs herein." Upon these representations plaintiffs charged that the property was originally held by her as trustee for her husband and that, she having died, the trust continued in their favor, defendants becoming trustees.

In short, it was the plaintiffs' theory that the resulting trust should be recognized by the Court and that the pro-

visions of the so-called "Stepmother Act," Chapter 18999, Laws of Florida, 1939 (found in Section 731.34, Florida Statutes 1941, as amended in 1941), should be invoked thereby securing to them their portions of the estate. The chancellor decided that support of their position was lacking and dismissed the bill of complaint.

It seems fitting at this point to define the burden undertaken by the appellants in their attempt to prevail in the chancery court. In the first place, as has been seen, they placed their hope of recovery squarely on the proposition that a resulting trust was created when, from time to time during his married life, William Thomas Day put in the name of his wife the property he and she, or as appellants insist he, acquired.

A trust of this character does not spring from a contract but "arises by implication of law" and "is founded on the presumed intention of the parties that the one furnishing the money should have the beneficial interest, while the other held the title for convenience or for a collateral purpose." Thompson on Real Property, Permanent Edition, Volume 5, Sections 2370 and 2372. The same author, in Section 2370, observes that "Where for any reason, the legal title to property is in one person under such circumstances as to make it inequitable for him to have the beneficial interest, equity will imply a trust in favor of the person entitled to the beneficial interest. It must appear from the entire transaction that there is an obligation on the part of the holder of the legal title to hold it for the benefit of someone else."

Applying this to the present controversy, then, it was the task of the appellants to show that, without any express contract between William Thomas Day and his wife, property purchased by him was placed in her name for convenience and in such circumstances that a trust would be implied and a court of equity would place upon her the obligation to hold it for his benefit. At this point, having stated what we conceive to be the general rule, we must observe that certain presumptions obtain in the establishment of trusts of this nature. "Generally speaking, where the purchase money of land is paid by one person, and the title is taken in the name

of another, the party taking the title is presumed to hold it in trust for him who pays the purchase price. The reason given for this rule is that the party who pays the money is presumed to intend to become the owner of the property, and the beneficial title follows such intention. This presumption, however, does not arise where the legal title is taken in the name of some person for whom the purchaser is under a legal or moral obligation to provide." Bailey v. Dobbins, 67 Nebraska 548, 93 N.W. 687. This authority was cited with approval in a decision of this Court, Semple v. Semple, 90 Fla. 7, 105 So. 134.

In a case like the present one, where it is shown that the property was bought by the husband and conveyed to the wife, a contrary "presumption arises from the relation of the parties at the time the conveyance was made that no trust was intended . . . ." Semple v. Semple, supra. She is presumed to take "the beneficial as well as the legal title . . . [it] being the duty of a husband to support [her] . . ." 26 Am. Jur., Husband and Wife, page 726. We are not unaware that this presumption may be rebutted by peculiar circumstances as, for instance, where all of a man's property is placed in the name of a near relative to the end that he is left penniless. Shaken v. Irving, 206 Ill. 597, 69 N.E. 510. The appellants were not only faced with overcoming the presumption we have discussed but it was their lot to substantiate their contention by evidence so "clear, strong and unequivocal" as to remove "every reasonable doubt as to [the] existence" of the trust. Brown v. Brown, 106 Fla. 423, 143 So. 737; Semple v. Semple, supra.

We shall now explore the testimony to determine just what facts were developed apropos the position that Ella B. Day became a trustee for her husband. Analyses of the initial pleading and the testimony offered to support it demonstrate that appellants relied upon three elements to establish the existence of a trust: (1) the retention of supervision by the husband; (2) the agreement for disposition of the property if the wife eventually survived the husband; and (3) the purchase of it with his earnings.

It is necessary to refer to the testimony of but one of

the daughters to illustrate the weakness of the position that management of the property rested in the husband to such a degree that it would show a failure of the intention to create estates by entireties or gifts to the wife. One of the daughters, in reply to the question: "In what respect did she manage the property?" stated "she had charge of everything, because he was on the road most of the time, and he could not take care of it himself." Later, she testified that she wished to change the quoted statement "to a certain extent" but the correction does not appear in the record. It is evident that the other daughter was unfamiliar with the situation because she stated that she had never even visited her father and stepmother in New Smyrna where they lived. Incidentally, the two daughters were the only witnesses in their behalf except one person whom they introduced in rebuttal. It seems useless to review the latter's testimony, so faint is the light it shed upon the issues. We will close our discussion of the evidence on this point with the comment that it wholly failed to demonstrate that William Thomas Day exercised control of the property to such a degree as to indicate the intention that she was not the true owner.

The next matter on which appellants relied was the mutual agreement between William Thomas Day and Ella B. Day with reference to distribution of the property to the benefit of the appellants in the event his death occurred before hers. The statements of the witnesses about such an arrangement were so vague as hardly to deserve mention. Instead of having the characteristics of an agreement, or even an understanding, they amounted to nothing more definite than a general conversation about the daughters' enjoyment of the property after their father and his wife had both died.

The remaining feature of the appellants' theory is little more impressive than the others. They insist that all the realty and personalty was obtained with the earnings of their father and that his wife contributed nothing. This is a position with which we do not agree.

It is true that she had earned nothing—in money, but throughout the thirty years she lived with her husband she

made a real contribution to the success of their marriage, to the comfortableness of their home and to his happiness. She was unskilled and, therefore, unable directly to enhance the family purse, but her efforts were nonetheless valuable to the relationship. Although he was the breadwinner she fully reciprocated in the role of housewife. She bore four children, all of which died in infancy. So far as we can determine from the record the duties which might be expected of a loyal and affectionate wife she performed cheerfully and without stint. For many years she was an invalid and her husband indulged her every whim in an effort to make her content.

It is not unnatural that he favored his wife in the disposition of his property and felt no real concern for the financial welfare of his daughters. One of them had been married more than twenty years and her husband was admittedly successful; the other had been married for a decade to a man of the same vocation as her father, railway engineer. Neither was in need of funds; neither had children. The father well knew their situation and doubtless thought it unnecessary to deprive his wife of any of their limited resources in order to provide for daughters whose husbands were prosperous.

These circumstances fall far short of rebutting the presumption that no resulting trust was created, dissipating by clear and unequivocal testimony any reasonable doubt as to its existence.

At the close of the discussion of the testimony in that case it seems only fair to observe that the appellants have conceded their failure to prove their case by their own witnesses, but they insist that any deficiency in their evidence was supplied by the testimony of the witnesses of the appellees. We have not found in the testimony of the latter the proof on which the former relies.

It being our view that the appellants wholly failed to meet the test enunciated in Brown v. Brown, supra, there is no need for us to discuss the effect on the estate of the act we have cited.

The decree is affirmed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.