MATHEWS, Justice.
This is an appeal from a final decree in which the Chancellor held that the deed to a certain piece of property purchased by *890 Antonio G. D’Uva, title to which was placed in the name of his son and his son’s wife at the time of such purchase on May 20, 1941, created a resulting trust in favor of Sarah D’Uva, as Curator of the Estate of Antonio G. D’Uva who died in Miami in November, 1952.
The Curator, Sarah D’Uva, had been married to the deceased since December 6, 1950, which was less than two years before his death. His previous wife had been dead for some time.
In November, 1952, Sarah D’Uva was appointed Curator of her husband’s estate by the County Judge of Dade County, and a copy of Antonio G. D’Uva’s will was filed' in the said Court. It does not appear that such will was probated because there was a later will being probated in Providence, Rhode Island. A deed appears of record in Dade County from Frank C. Downs and wife conveying the lands in question to Sebastian V. D’Uva and Lucy Providence D’Uva, his wife, the son and daughter-in-law of the deceased. This deed was dated May 26, 1941. At about the same time Sebastian V. D’Uva and Lucy Providence D’Uva, his wife, executed a mortgage on said land which was payable through the First Federal Savings and Loan Association of Miami over a period of time extending from July 5, 1941 through April 14, 1952, when the satisfaction was given to Sebastian V. D’Uva and his wife. On November 18, 1952, the appellee filed a bill of complaint against Sebastian V. D’Uva and Lucy Providence D’Uva praying that the Court decree that a trust resulted by operation of law as to the above described real estate and that the same was held in trust for Antonio G. D’Uva and that the appellants be decreed to have no right, title or interest in said real estate under the warranty deed.
In answering the bill of complaint the appellants admitted the identity of the property and that the title was in their name. They denied all other allegations of the complaint except to admit that Antonio G. D’Uva and his wife were residing on the premises with them by sufferance and by consent of themselves, the true owners. They specifically denied that it was ever the intention of Antonio G. D’Uva, the father of Sebastian V. D’Uva, to retain any title or beneficial interest in the property, and that the property was an outright gift by Antonio G. D’Uva to his son and daughter-in-law made in 1941, and that the title was absolutely and unconditionally in their names and never vested in Antonio G. D’Uva, and that no resulting trust arose by reason of any action on his part thereafter. It appears that for a long time after the deed in question, Antonio G. D’Uva and his then-wife lived in the wintertime with their son and daughter-in-law. After the death of the first wife and the marriage to the second, Antonio G. D’Uva began the construction of a residence for himself and and his new wife at 4900 N. W. 5th Avenue, and he transferred title to such property into the name of Sarah D’Uva and himself as tenants by the entireties. This home was substantially complete at the time of his death and the Curator now lives in said home. It further appears that on or about October 1, 1952, Antonio G. D’Uva reaffirmed in writing that the original property covered by the deed of 1941 was a gift to his son and daughter-in-law.
The issue was tried before the Chancellor and he entered his final decree in which he found that Sebastian V. D’Uva and his wife only held the naked legal title to the property and that a resulting trust existed;, that Antonio G. D’Uva was the owner of the real estate in question at the time of his death, and ordered that the defendants convey the said property to the Curator within thirty days from the date of the said decree.
It is apparent that the Chancellor applied the wrong rule of law in deciding the questions involved in this case, which was that a resulting trust existed by operation of law.
The father was a man of some means. He was interested in his son and daughter-in-law. Fie paid at least a portion of the purchase price for the land and instructed the owner to make the deeddn the names of his son and daughter-in-law. This did not create any presumption that *891 a resulting trust was intended. In the case of Frank v. Eeles, 152 Fla. 869, 13 So.2d 216, we held that where the purchase money of land is paid by one person and the title is taken in the name of another, the party taking the title is presumed to hold it in trust for him who pays the purchase money. In the same case however, we held that this presumption did not arise where the legal title was taken in the name of some person for whom the purchaser is under a legal or moral obligation to provide. See also Semple v. Semple, 90 Fla. 7, 105 So. 134, where we held that a contrary presumption arises from the relation of the parties at the time the conveyance is made.
The record in this case shows that the father was very much interested in his son and daughter-in-law.
In the case of Culbreath v. Reid, Fla., 65 So.2d 556, 558, we held:
“* * * There can be no greater consideration than the natural ‘love and affection’ of parents for their children * * * y>
As shown by this record, the presumption was that the father intended the land as a gift to his son and daughter-in-law and such presumption can only be overcome by evidence so clear, strong and unequivocal as to remove every reasonable doubt as to the existence of the gift.
There could be occasions where the facts would justify the conclusion that a resulting trust existed even where father and son are two of the parties involved. If the father was in domestic difficulty or if he was in financial difficulty it might be to his advantage to make the naked legal title to property in his son with the understanding that a resulting trust existed in favor of the father. No such facts exist in this case.
The Curator testified that her husband and father of Sebastian stated he did not take the title in his name because he did not wish the people of Florida to know how much property he owned. He had no such feeling with reference to -the new home he had built for himself and the Curator, and any one could have gone to the Court House and ascertained the description and approximate value of the property which she claims he took in his son’s name. The excuse offered is a poor excuse and falls far short of refuting the presumption that a gift was intended and no resulting trust was created.
Having reached the above conclusion it is unnecessary that we discuss other assignments of error.
Reversed, with directions to set aside the final decree and enter a decree conforming to the views expressed in this opinion.
ROBERTS, C. J., anud TERRELL and SEBRING, J}., concur.