ESTATE of Gregg MAXCY, Jessie L. Maxcy and Reverend George C. Stulting, Co-Administrators, Petitioners-Appellants-Cross Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee-Cross Appellant.

ESTATE of Hugh G. MAXCY, Jessie L. Maxcy and Reverend George C. Stulting, Co-Executors, Petitioners-Appellants-Cross Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee-Cross Appellant.

No. 29885.

United States Court of Appeals, Fifth Circuit.

April 13, 1971.

Robert O. Rogers, Palm Beach, Fla., for appellants.

Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Bennet N. Hollander, Kenneth L. Gross, and Lee A. Jackson, Attys., Tax Div., U.S. Dept. of Justice, K. Martin Worthy, Chief Counsel, Richard P. Milloy, Atty., I.R.S., Kenneth L. Gross, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before GEWIN, COLEMAN and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge:

At issue in this case is the ownership, for estate tax purposes, of 79 shares of stock in Maxcy Securities, Inc., a closely-held corporation once controlled by Gregg Maxcy, (hereinafter, the decedent). The sole question for our determination is whether Gregg Maxcy executed a valid gift of the 79 shares to his wife. We think that he did and reverse the Tax Court's determination to the contrary.

The Commissioner concluded that these shares should have been included in the decedent's estate and assessed a deficiency.[1] Appellants petitioned the Tax Court for a redetermination of the deficiency, alleging that the seventy-nine shares had passed by gift to the decedent's widow, Jessie L. Maxcy, in 1933. The Tax Court found that there had been no gift valid under Florida law and assessed the deficiency in Gregg Maxcy's estate at $229,827.02.[2]

There is no substantial dispute as to the facts involved in this case because a number of facts were stipulated and other pertinent facts were found by the Tax Court. In 1933, Gregg Maxcy endorsed a stock certificate representing 245 shares of Maxcy Securities, Inc., and instructed the corporation's secretary, Mrs. Charlotte Varena, to issue four certificates of stock in varying numbers of shares totaling 245. The certificates were to be issued to himself; to Jessie Maxcy, his wife;[3] to Hugh Maxcy, his son; and to Mrs. Varena, the secretary. Each of these certificates was properly executed by Gregg Maxcy as president and by Mrs. Varena as secretary, and the corporate seal was correctly affixed; each was ultimately deposited in the vault at the offices of Maxcy Securities, Inc., where they were found subsequent to Gregg Maxcy's death. Testimony in the

---

1. Accordingly, half of these shares were included in the estate of Hugh Maxcy, Gregg Maxcy's only child who died in 1963, three years after his father. A joint notice of appeal was filed by both estates, and the Commissioner filed a protective cross appeal with respect to the estate of Hugh Maxcy.

2. Estate of Gregg Maxcy, 28 TC Memo 783 (1969).

3. Prior to this time, it is undisputed that Jessie Maxcy owned one of the 5 original shares of Maxcy Securities, Inc.

Tax Court shows that the certificates were physically delivered to all except Mrs. Maxcy prior to their being deposited in the vault. All recipients except Mrs. Maxcy knew the combination of the safe and had ready access to it.

██ It is a well established principle of Florida law that the existence *vel non* of a gift is a question of law to be determined after an examination of the facts and circumstances surrounding the transaction.[4] To constitute a valid gift, there must occur simultaneously an intention by the donor to relinquish dominion over the property and a delivery thereof to the donee.[5] The delivery may be actual or constructive.[6]

In the instant case, there are ample and well supported manifestations of Gregg Maxcy's intent to effect a gift to his wife. Uncontroverted testimony in the Tax Court established that the decedent stated repeatedly to his wife, to the corporate secretary, and to his accountant, that he considered the gift complete. A representation of his wife's ownership of a substantial interest in the corporation is repeatedly reflected in the corporate minutes and income tax returns.[7] The 79 shares were transferred on the corporate books to reflect her ownership. Except for the absence of actual physical delivery, Mrs. Maxcy's shares were accorded treatment identical to the other three certificates for which a gift was in fact consummated. Nevertheless, the government has offered no explanation for its theory that the dece-

dent intended a different result as to his wife. In sum, our examination of the record on appeal reflects no statement or conduct by Gregg Maxcy which would be inconsistent with an intention to make a valid gift to his wife. Even his failure to hand the certificate to her before placing it with their personal papers can be seen as an act of convenience in no way inconsistent with an intent to consummate the gift.

The crux of the government's position is that the circumstances of the delivery of the shares of stock at issue are not sufficient under Florida law to establish that the decedent intended to part with dominion over the certificate, particularly since the decedent's widow never had her hands on the stock certificate at issue. We decline to adopt such a narrow view of the applicable Florida law because we are convinced that in these circumstances Florida courts would hold that the decedent effected a sufficient delivery.

██ It is of significance that title to the stock at issue was transferred without consideration from a husband to his wife. Such a transfer is presumed in Florida to be a gift; to establish the contrary requires clear and concise proof.[8] Moreover, the decedent formally transferred ownership of the 79 shares to his wife by causing a new certificate to be issued and instructing that his wife's ownership be reflected in the corporate books. Coupled with proof of an intent to convey ownership rights, such

4. Lowry v. Florida Nat'l Bank of Jacksonville, 42 So.2d 368 (Fla.1949).

5. Canova v. Florida Nat'l Bank of Jacksonville, 60 So.2d 627, 629 (Fla.1952); King v. King, 55 So.2d 181 (Fla.1951); Lowry v. Florida Nat'l Bank of Jacksonville, 42 So.2d 368 (Fla.1949); Sullivan v. American Tel. & Tel. Co., 230 So.2d 18 (Fla.App.1969).

6. In re Slawson's Estate, 41 So.2d 324, 326 (Fla.1949); Dodson v. National Title Ins. Co., 159 Fla. 371, 31 So.2d 402, 405 (1947); Barber v. Barber, 128 Fla. 645, 175 So. 713 (Fla.1937).

7. For example, various corporate minutes for 16 of the 19 years from 1933 to 1951 show Mrs. Maxcy as an officer, director, and/or shareholder of the corporation. She was vice-president from 1933 until 1946, at which time she became assistant secretary. Upon Gregg's death in 1960, she became president. Several of the records reflect her ownership interest at 80 shares.

8. See, *e.g.*, Ray v. Ray, 44 So.2d 286 (Fla. 1950); Frank v. Eeles, 152 Fla. 869, 13 So.2d 216 (1943); Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727 (Fla.1941); Olsen v. Olsen, 195 So.2d 864 (Fla.App. 1967).

a transfer has been held sufficient to effect a delivery or to complete a gift.[9]

The government attaches great significance to the finding by the Tax Court that Mrs. Maxcy never had actual physical possession of the stock; they argue that since she did not know the combination to the corporate vault, she could not have gained *access* to it. Accordingly, they say, since Gregg Maxcy never put the stock within her reach, he could not have intended to relinquish dominion over it and in fact never delivered it to her.[10]

On the contrary, we are convinced from the facts and circumstances of this case that Mrs. Maxcy indeed had a legally cognizable right of access to the contents of the vault. From the very inception of the corporation its records and books consistently show Mrs. Maxcy as holder of well over 10% of the corporate stock, a director, and an officer of the corporation. The law of Florida applicable in 1933 unquestionably would have accorded her access to the property of the corporation.[11]

---

9. See, *e. g.*, cases cited Anno. Gifts of Stock-Delivery, 23 A.L.R.2d 1171, 1186 (1952). *Compare* Kuebler v. Kuebler, 131 So.2d 211, 219 (Fla.App.1961) *with* Eulette v. Merrill, Lynch, Pierce, Fenner & Beane, 101 So.2d 603, 605 (Fla.App. 1958). *See also* Foley v. Allen, 170 F.2d 434 (5th Cir. 1948); Coffey v. Commissioner of Internal Revenue, 141 F.2d 204 (5th Cir. 1944); Marshall v. Commissioner of Internal Revenue, 57 F.2d 633 (6th Cir. 1932); Southern Industrial Institute v. Marsh, 15 F.2d 347 (5th Cir. 1926), cert. denied 273 U.S. 747, 47 S.Ct. 449, 71 L.Ed. 872.

In *Coffey, supra*, this court affirmed the decision of the Tax Court in a Florida case, 1 T.C. 579 (1943), wherein the Tax Court stated at page 586:

> The mere transfer of shares to the name of a donee on the company's books with intent to make a gift is sufficient to pass title even though the tranferor retains possession of the certificates.

10. The holding of the Tax Court is expressed in the following language:

> Jessie testified that she never had any Maxcy stock certificates in her possession and the evidence presented established that all times stock Certificate No. 6 in Jessie's name remained in Maxcy Securities' vault, *inaccessible to Jessie. As a result* we find and hold that Certificate No. 6 was never physically delivered into Jessie's possession. (Emphasis added)

For clarity we deem it appropriate to state that Mrs. Maxcy did not testify at any point that the vault was *inaccessible* to her. Indeed there was no testimony whatever in the record to this effect; there was only testimony that she did not know the *combination* to the vault. It should be noted that Mrs. Maxcy was one of the original incorporators and, without dispute, owned one of the original 5 shares of stock of Maxcy, Securities.

During the lifetime of the decedent, Gregg Maxcy, and while Mrs. Maxcy was serving as director and as vice-president or as assistant secretary, she was paid substantial sums for her services as an officer of the corporation. Salaries of the officers were fixed at annual meetings of the stockholders. During part of the time Gregg Maxcy was paid a salary of $6000 a year as president and Mrs. Maxcy was paid the sum of $5000 a year as vice-president. At other times she was paid $2500 or more per year as assistant secretary.

The by-laws of the corporation are not unique. They vest the management of the business and property of the corporation in the hands of the three-member board of directors; they also outline the duties of president, vice-president, secretary and treasurer. As vice-president Mrs. Maxcy was authorized to perform the duties of the president in his absence and as assistant secretary to perform the duties of the secretary in her absence. The corporation was authorized to treat the *holder of record* of any share or shares of stock as the *holder in fact* of the same. In addition to the president and secretary, the vice-president and assistant secretary were also authorized to sign stock certificates and to keep records thereof in the books of the corporation.

In sum, giving appropriate consideration to the foregoing facts and other facts disclosed elsewhere in this opinion, it is clearly erroneous to conclude, in our judgment, that the contents of the corporate vault were inaccessible to Mrs. Maxcy, especially in view of the fact that there is no testimony to support the conclusion of inaccessibility.

11. Fla.Stat.Ann. § 611.23 (Repealed Fla. Laws 1953, C.28170, § 2); Florida Military Academy v. State ex rel. Moyer, 127

Moreover, we note, there is no evidence whatsoever in the record which remotely suggests that she was ever denied access to the vault. In addition, the record reflects that the contents of the vault were not limited to business records of Maxcy Securities, Inc. On oral argument, counsel were asked to supply the court with clarifying affidavits specifying the contents of the vault and reflecting the true facts as to the right of access to it by Mrs. Maxcy.[12] Appellants have responded by filing affidavits executed by Mrs. Charlotte Varena, the corporate secretary, and Mrs. Maxcy.[13] These affidavits clearly show that Mrs. Maxcy did in fact have access to the vault through Mrs. Varena and that she indeed used it for safekeeping of numerous of her own personal belongings, including deeds, family jewelry, and silver.

Giving full consideration to the factual evidence disclosed by the record, we are inclined to believe that the rights of access to the vault accorded in fact and in law to Mrs. Maxcy were substantial enough that the decedent's act of placing the stock certificate in the vault was an actual delivery. We are convinced, however, and unhesitatingly hold, that there was a constructive delivery which completed the inter vivos gift of the 79 shares of stock in question by Mr. Maxcy to his wife. In

---

Fla. 781, 174 So. 3 (Fla.1937); Soreno Hotel Co. v. State, 144 So. 339 (Fla. 1932). Substantially the same rights would inure to Mrs. Maxcy subsequent to the repeal of the above cited statute. Fla.Stat.Ann. § 608.39(4) (Added Laws 1953, C.28170, § 1, replacing Fla.Stat, Ann. § 611.23, supra); Florida Tel. Corp. v. State ex rel. Peninsular Tel. Co., 111 So.2d 677 (Fla.App.1959); State ex rel. Fussel v. McLendon, 109 So.2d 783 (Fla. App.1959).

12. The evidence shows that the vault was used for storing personal belongings of Mr. Maxcy; it did not, however, plainly disclose the nature and extent of the personal belongings contained therein. The ambiguous testimony elicited from Charlotte Varena, the corporate secretary, is as follows:

Q. What was contained in the vault?
A. Oh, a lot of old records, current records.
Q. Were records of older corporations kept in there?
A. Yes, sir.
Q. Gregg Maxcy, Inc.?
A. Yes, sir.
Q. G & J, Inc.?
A. Yes, sir.
Q. Gregg Maxcy Company, Gregg Maxcy's personal records, real estate transactions, and the like?
A. A certain amount, yes, sir.
Q. So that the contents of the safe or vault were not limited to records of the corporation known as Maxcy Securities, Inc.?
A. That's right.

13. Oral argument was heard January 12, 1971; the government made no objection to the suggested procedure at this time. The affidavits were filed by appellants with the Clerk of this Court on January 29, 1971. At that time counsel for taxpayer certified that copies were served upon counsel for the government. No objection has yet been raised and no controverting affidavits have been filed. Moreover, the facts sworn to remain uncontroverted in the record.

In many circumstances we would be hesitant even to allude to facts gathered from outside of the record at trial. In this case, however, this information merely substantiates our conclusion that the government would not be able to rebut the near conclusive indications that a completed gift had occurred. We interpret the government's lack of objection and failure to controvert the sworn facts as candid admission, in the interest of fairness and justice, that the facts are as alleged. The government attorney has commendably declined to stand on formality in order to arrive at a determination of the correct tax based upon all relevant facts. See United States v. Hathcock, 441 F.2d 197 (5th Cir. 1971). The Supreme Court has itself adopted a similar course in like circumstances. See Moon v. Maryland, 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262, 264 (1971); Howard v. Lyons, 360 U.S. 593, 597–598, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1958).

Barber v. Barber [14] the Supreme Court of Florida recognized the doctrine of constructive delivery, saying:

> The question of delivery is determined largely by the nature and locality of the article or articles given.[15]

To require the momentary physical transfer of possession to Mrs. Maxcy of a stock certificate issued and recorded in her name and stored in the vault of a corporation in which she was continually a shareholder, officer, and director would be a form of tokenism in which we do not think the courts of Florida would indulge. The judgment is reversed both as to the Estate of Gregg Maxcy and the Estate of Hugh Maxcy. Both causes are remanded for determination of additional attorneys' fees and expenses allowable as deductions; applicable gift taxes, if any, and for other adjustments in both estates recognized by all parties to be necessary.

Reversed and remanded.

14. 128 Fla. 645, 175 So. 713 (Fla. 1937).

15. Id. at 715. *See also* cases cited note 6 *supra.*