738 So.2d 1008 (1999)
Gail PERSAN, et al, Appellant,
v.
LIFE CONCEPTS, INC. etc., et al, Appellee.
No. 98-199.
District Court of Appeal of Florida, Fifth District.
August 6, 1999.
*1009 Michael J. Bittman and Aristides J. Diaz, of Rosenbluth, Losey, Bittman, Morse & Keidaish, P.A., Orlando, for Appellants, Gail Persan, Steven G. Buchbinder and Terry Perrott.
Robert A. Butterworth, Attorney General, and Louis F. Hubener, Assistant Attorney General, Tallahassee, for Appellant, State of Florida.
James V. Etscorn, Robert W. Thielhelm, Jr., and Deborah E. Muntwyler, of Baker & Hostetler, LLP, Orlando, for Appellees.
GRIFFIN, J.
Appellants, Gail Persan, et al., timely appeal a final judgment of involuntary dismissal at the close of the plaintiff's case in a non-jury trial. We affirm.
The action was filed on behalf of disadvantaged adults who claim to be beneficiaries of a charitable or resulting trust created when donors contributed property and funds in 1979 to the Central Florida Sheltered Workshop, Inc. ["CFSW"] to be used to construct living facilities for them. The homes were operated for almost fifteen years until the decision was made to close them and sell the property. The defendant, Life Concepts, Inc., d/b/a Quest, Inc., the entity that closed the group homes, is the successor to CFSW.
In 1979, William Demetree and some twenty partners donated twenty-four acres to CFSW. Demetree, who had a handicapped son, testified that he and his partners donated the parcel:
[T]o build some homes there so their clients or the people who went to Central *1010 Florida Workshop would have a place to go and maybe raise some ... do some gardening, or what have you, and have a place to stay, and the parents would come and help on the weekend and relieve the people in charge. And that's what they did do.
CFSW solicited over $200,000 from the community to raise the additional costs of construction of the homes. The day-to-day operation of the homes was paid for by the residents' social security checks and payments made by their parents.
Although we may agree that it is regrettable that the homes will not continue to operate as residences for the disabled plaintiffs, there is no merit to the plaintiffs' suit and the lower court correctly entered a judgment of dismissal after trial. The lower court found that the donations had been made for a specific purpose but that no trust was proved. The dissent finds this to be inconsistent but it is not. Making a gift to a charity for a specific project or purpose does not create a charitable trust. For this court to suggest that it does would create havoc for charitable institutions. A charity has to be able to know when a donation is a gift and when it is merely an offer to fund a trust for which the charity is taking on fiduciary responsibilities. The creation of such a trust must be express. Besides, as the lower court noted, the object of the gift was carried outthe two homes were built and were operated for almost fifteen years.
We reject appellant's contention that the lower court erred in not finding the existence of a resulting trust, as a matter of law. The evidentiary burden to prove a resulting trust is "clear, strong and unequivocal," beyond a reasonable doubt. Harnish v. Peele, 386 So.2d 8, 10 (Fla. 5th DCA 1980). No evidence of any intent to create any type of trust is present. There is only an intent to donate land and money for the homes to be established. CFSW's plan to make the homes "permanent" does not convert the gift into a trust.
Although the land for these homes was donated by Mr. Demetree and many other persons, and the funds for construction were solicited from the public, only
Mr. Demetree testified:
Mr. Etscorn: Sir, in your professional career, you've created trusts before, have you not?
Mr. Demetree: Yes, sir.
Mr. Etscorn: And you've done that on at least ten occasions, have you not?
Mr. Demetree: I don't know how many, but I've done some trusts.
Mr. Etscorn: Actually, more than ten, isn't it?
Mr. Demetree: I can't stop and count at the moment.
Mr. Etscorn: Okay. When you intend to hold land in a trust, you give it to a trust, do you not?
Mr. Demetree: Yes.
Mr. Etscorn: In this case, however, you did not do that; isn't that correct?
Mr. Demetree: We gave them land, gave them a deed to it.
Mr. Etscorn: Did not give it in trust?
Mr. Demetree: No, sir.
Mr. Etscorn: And didn't intend it to be a trust, correct?
Mr. Demetree: Well, the intention was for it to stay there and be used for that. It was not written out as a trust, but I guess the trust was the trust, the trust between people and parties; that if you give them something, they will use it for that.
Mr. Etscorn: Prior to 1979, sir, you've been a trustee or co-trustee on several pieces of property, haven't you?
Mr. Demetree: Yes, sir.
Mr. Etscorn: Now, you gave property to Boys Town right next-door to CFSW Group Home; correct?
Mr. Demetree: Yes, sir.
Mr. Etscorn: You gave that property in fee simple, didn't you?
Mr. Demetree: Yeah. Yes.

*1011 Mr. Etscorn: Now, the property you have to CFSW, pursuant to the deed here, you gave that as a gift, didn't you?
Mr. Demetree: Yes, sir.
Mr. Etscorn: And the deed that you gave that's been identified previously was not given with any conditions; correct?
Mr. Demetree: That's correct.
Mr. Etscorn: And when you signed this deed, when you went to execute it, you read the deed, didn't you?
Mr. Demetree: Yes, sir.
Mr. Etscorn: And the deed was clear when you executed it, wasn't it?
Mr. Demetree: Yes, sir.
Mr. Etscorn: And you understood the deed at the time that you executed it, didn't you?
Mr. Demetree: Yes, sir.
Mr. Etscorn: In fact, there are no restrictions whatever in this deed, are there?
Mr. Demetree: There are no restrictions in the deed.
Mr. Etscorn: And there are no possible rights of reverter in the deed; correct?
Mr. Demetree: That's correct. I mean I'm not an attorney, but that's what the law says.
Mr. Etscorn: You know what a right of reverter is, don't you?
Mr. Demetree: Yes, sir.
Mr. Etscorn: And there is none here?
Mr. Demetree: No, sir.
Mr. Etscorn: There are no conditions subsequent cited in the deed, are there?
Mr. Demetree: No, sir.
Mr. Etscorn: Now, Tom Ball, the person that you indicated drafted this deed, did I understand you correctly to say that you spoke to him?
Mr. Demetree: Yes.
Mr. Etscorn: Okay. However, you never told Mr. Ball, did you, sir, prior to the time that you executed that deed, that there was supposed to be any language in this deed holding the property in trust; is that correct?
Mr. Demetree: That's correct.
Mr. Etscorn: Now with respect to this donation of land, you took a tax deduction, didn't you?
Mr. Demetree: Yes, sir.
Mr. Etscorn: And you know that if you had a possible right of reverter coming back to you that the IRS might come back to you with that, wouldn't they?
Mr. Demetree: I presume they would. I don't know that now, I'm notI won't start talking about Internal Revenue laws, but we did take a deduction, to answer your question.
Mr. Etscorn: And you did that because you intended this as a gift; correct?
Mr. Demetree: Yes, sir.
Mr. Etscorn: And at no time prior to executing this deed to CFSW, did you ever speak to anyone at CFSW and say, I would like you to act as a trustee for this land; correct?
Mr. Demetree: That's correct.
Even if any evidence of an intent to create a trust could be found in this record, the lower court, which is the factfinder charged with weighing the evidence, found that a trust was not proved. Our standard of review is limited to ascertaining whether no one could not find the evidence was clear, strong, unequivocal, beyond a reasonable doubt. See Kingsley v. Kingsley, 623 So.2d 780, 787 (Fla. 5th DCA 1993), review denied, 634 So.2d 625 (Fla.1994). The dissent's disagreement "that the plaintiffs failed to submit evidence tending to prove a resulting charitable trust" falls far short of the threshold for reversal of the lower court's evaluation that the evidence was too weak to support a verdict for the plaintiffs.
As for the question of whether a charitable trust has to be in writing, appellees rely on section 737.501(6) and section 689.05, Florida Statutes (1997). Reading *1012 Part V of Chapter 737 yields no clear answer. Some portions of it do appear to limit its application to private foundation trusts and split interest trusts, but other subsections suggest the opposite. See § 737.501(6), § 737.502, .506-.08.[1] Section 689.05 does make clear, however, that creation of a trust in land must be in writing and signed by the party creating the trust. There is only the limited exception where the trust results "by construction of law."
There is no "construction of law" that will create a "resulting trust" in favor of these disabled persons. A resulting trust is a reversionary, equitable interest[2] that arises under circumstances which raise the unrebutted inference that the transferor does not intend the one who receives the property to have the beneficial interest. It is called a "resulting trust" because the conveyance to the transferee is deemed incomplete in that the beneficial interest in equity cannot go to him. A resulting trust most commonly covers a situation where one person supplies the funds to another to purchase land on his behalf. Here, there were no funds given to purchase land from a third party. The transferor owned the land and then conveyed it free and clear to CFSW. This cannot be a resulting trust:
A fundamentally different situation is presented, however, when an owner of property transfers it directly to another without declaring a trust and without other manifestation of intention concerning beneficial enjoyment. In these facts there is no inference that the transferee holds the property on resulting trust even though the transfer is gratuitous. Instead, the inference is that the transferor in such a case intends to make a gift to the transferee.
Restatement (Third) of the Law: Trusts § 7 (Tentative Draft No. 1, 1996). Here, there is no "implication of law" that excuses the failure to follow the formalities required by section 689.05 for creation of a trust.
AFFIRMED.
THOMPSON, J., concurs.
HARRIS, J., dissents, with opinion.
HARRIS, J., dissenting.
The issue in this case is whether the trial court erred in granting a dismissal of plaintiffs' action at the close of their case. When considering the propriety of a motion for directed verdict (or a motion to dismiss at the close of the plaintiff's case), the trial court must consider the evidence in a light most favorable to the non-moving party and if there is any evidence to support a possible verdict for such party, a directed verdict is improper. Tinwood N.V. v. Sun Banks, Inc., 570 So.2d 955 (Fla. 5th DCA 1990). Because I find the record supports a possible verdict for the plaintiffs below, I would reverse.
This action was filed on behalf of disadvantaged adults who claim to be beneficiaries of a charitable or resulting trust created when donors contributed property and funds to be used by the trustee to construct living facilities for them. The action is against the alleged successor trustee who closed the group homes which were occupied by the purported beneficiaries since such homes were built. It is alleged that the trustee plans to sell the homes for over $500,000, without the consent of the beneficiaries or court approval, and to use the funds in a manner unrelated to the donors' intent. Plaintiffs sought a declaratory *1013 judgment establishing that a trust existed for their benefit.
In 1979, William Demetree and his partners donated 24 acres to Central Florida Sheltered Workshop, Inc., (CFSW), one of the defendants herein. Although the deed did not contain words of trust, Demetree, who had a handicapped son, testified that he and his partners donated this $100,000 parcel:
[T]o build some homes there so their clients or the people who went to Central Florida Workshop would have a place to go and maybe raise some ... do some gardening, or what have you, and have a place to stay, and the parents would come and help on the weekend and relieve the people in charge. And that's what they did do.
Demetree, a general contractor, built the homes without charge for his services and contributed an additional $1,000. CFSW solicited over $200,000 from the community to raise the additional construction costs of the homes. The operation of the homes was funded by the residents' social security checks which were paid to the "trustee" with the parents paying the balance of the additional operating costs of the facility as billed. The homes were completed in 1982 and operated as a home for the handicapped until it was closed in 1997. There was testimony that many contributed to the building project based upon a concern that the handicapped children would have no place to live after their parents were gone. There was also testimony that the executive director of CFSW assured the potential donors that the group homes would be permanent residences for the handicapped children. When the group homes closed, many of the handicapped children, now adults, were moved back into the homes of their aging parents.
Defendants asserted in their defense that the donations were merely a gift to CFSW and that no trust was intended. The trial court, in an internally inconsistent opinion, ruled (1) that no trust was established and (2) that the alleged donations were contributed for a specific purpose which purpose was accomplished. This judgment seems to say in one paragraph that no trust existed but in another that a trust was created but only for a limited period.
First, I disagree with the trial court that a charitable trust must be in writing. Admittedly, section 737.501(6), Florida Statutes (1997), defines trust as "an express trust created by a trust instrument, including a will." However, such provision relates to "private foundation trusts and split interest trusts" which are conceded not to be present in this case. See section 737.502, Florida Statutes (1997). The more applicable statute is section 689.05, Florida Statutes (1997), which requires that trusts be in writing except where a conveyance is made "by which a trust or confidence shall or may arise or result by the implication or construction of law." That is precisely what is alleged in this case. I see no reason why a resulting charitable trust cannot arise under this provision.
Second, I disagree with the trial court that the specific purpose of the donations was accomplished. The defendants below argued, and the trial court apparently agreed, that once the buildings were completed, CFSW had met its obligation to the donors. This is too narrow a view of the purpose behind the donations. Under this theory, CFSW could have immediately, after the construction ended, sold the buildings to the school board for additional classrooms and have applied the proceeds to its general account. Obviously, the contributions were not made to build buildings; they were made to build homes for handicapped children for their use and enjoyment. The greatest proof of this is that the homes were constructed and operated as a home for the handicapped for fifteen years. If one accepts the proposition that the parties contemplated at least some operation of the facilities as a home for the handicapped, there is nothing to support a fifteen-year limitation. The purpose would *1014 be to house the handicapped children (at least those known at the time of the trust's creation) for their lifetime or until the purpose of the trust became impracticable. This impracticability should be determined by the court after appropriate pleadings.
Finally, I disagree with the trial court that plaintiffs failed to submit evidence tending to prove a resulting charitable trust. In F.J. Holmes Equipment, Inc. v. Babcock Bldg. Supply, Inc., 553 So.2d 748 (Fla. 5th DCA 1989), this court held that "a resulting trust may arise in favor of one who furnishes money used to purchase property the legal title to which is taken in the name of another. The equities in this direction are especially strong when the parties intended that the title was to be held by the legal grantee for the use and benefit of the person supplying the consideration for the purchase." I see no reason why the one supplying the consideration cannot designate a third person or persons as beneficiaries of the resulting trust. See Auker v. Hendrickson, 145 Neb. 687, 17 N.W.2d 878 (1945) ( resulting trust found in favor of the children of the grantor). Our supreme court in Frank v. Eeles, 152 Fla. 869, 13 So.2d 216, 218 (1943), citing Thompson on Real Estate, observed, "Where, for any reason, the legal title to property is in one person under such circumstances as to make it inequitable for him to have the beneficial interest, equity will imply a trust in favor of the person entitled to the beneficial interest. It must appear from the entire transaction that there is an obligation on the part of the holder of the legal title to hold it for the benefit of someone else."
In Wadlington v. Edwards, 92 So.2d 629, 631 (Fla.1957), the court defined a resulting trust as:
[A] status that automatically arises by operation of law out of certain circumstances... In the creation of a resulting trust it is essential that the parties actually intend to create the trust relationship but fail to execute documents or establish adequate evidence of the intent. The typical illustration is where one man furnishes the money to buy a parcel of land in the name of another with both parties intending at the time that the legal title is held by the named grantee for the benefit of the unnamed beneficiary.
To deny a resulting trust in this case, one would have to hold that the parties intended that the gifts to CFSW had no strings attached: That CFSW could have used the buildings constructed from the contributions made to benefit the handicapped for any purpose and could have disposed with them at any time. The evidence simply will not support this contention. It appears, or at least the evidence would support a possible verdict in favor of the plaintiffs when considering the defendants' motion for dismissal, that the contributions were made in order for CFSW, a non-profit corporation formed for the purpose of providing such services, to take title to the real estate and the personal property involved herein for the benefit and use of specific designated beneficiaries the handicapped children of the community and particularly the handicapped children of the contributors who, for so many years, lived in the facilities.
The defendants below are concerned that if a trust is established, they cannot avoid being obligated to operate the homes forever. That issue is not now before us because the complaint merely requests the establishment of the trust. It would appear, however, that if a trustee wants to avoid the obligations of a trust, it can resign as trustee and convey the trust assets to one willing to perform the trust duties. Further, if the trustee believes that the object of the trust is no longer feasible, it can petition the court for relief. What it cannot do, I submit, is sell the trust assets and pocket the money for some unrelated purpose.
NOTES
[1] The dissent says it is clear that the trust in question is not a split interest trust but, as described in the dissenting opinion, the hypothetical trust sounds exactly like a split interest trust, i.e., the trust is to exist for the benefit of identified children of the donors until their death and then be used for public charitable purposes.
[2] Precisely because a resulting trust protects a transferor of property whose disposition of the property is incomplete or the payor of the purchase price who is supposed to get the title but does not, the creation of a "resulting trust" in favor of the third party disabled tenants of the home appears to be a legal impossibility.