959 So.2d 339 (2007)
Garrison KEY, Appellant,
v.
Dieter TRATTMANN, Appellee.
No. 1D04-5130.
District Court of Appeal of Florida, First District.
May 25, 2007.
*341 Garvin B. Bowden of Gardner, Wadsworth, Duggar, Bist & Wiener, P.A., Tallahassee, for Appellant.
J. Marshall Conrad of Ausley & McMullen, Tallahassee, for Appellee.
BENTON, J.
Garrison Key sued for real property titled in Dieter Trattmann's name, property that Mr. Key alleged he paid for, and now appeals final summary judgment entered in favor of Mr. Trattmann. We reverse and remand for further proceedings.
The complaint alleges that Mr. Key supplied all funds used to acquire certain real property in Tallahassee (the property) from a third party, and seeks specific performance of an alleged, oral agreement under which Mr. Trattmann, who took title, was obligated to convey the property to Mr. Key on demand; or, in the alternative, a decree declaring the property subject to a resulting trust. Mr. Trattmann's answer denies that Mr. Key paid for the property, and sets up both the statute of limitations and the statute of frauds as affirmative defenses.

I.
"A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law." Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). The parties do not dispute that, on July 22, 1994, a third party executed a warranty deed conveying title to the property to Mr. Trattmann; that Mr. Trattmann and Mr. Key both lived in California at the time; that Mr. Key was a real estate broker whose company, Key Properties, operated in Tallahassee; that an employee of Key Properties was responsible for managing the property; and that Key Properties applied rents from the property to management fees and maintenance expenses.
The movant for summary judgment bears the burden of showing, by competent evidence, the nonexistence of any question of material fact. The movant's proof must be conclusive, such that all reasonable inferences which may be drawn in favor of the opposing party are overcome. "[I]f the record raises even the slightest doubt that an issue might exist, summary judgment is improper."
Jackson v. H.L. Bouton Co., 630 So.2d 1173, 1175 (Fla. 1st DCA 1994) (quoting Holland v. Verheul, 583 So.2d 788, 789 (Fla. 2d DCA 1991)) (citations omitted). See also Martin County v. Edenfield, 609 So.2d 27, 29 (Fla.1992) ("A defense is not a sufficient basis for granting a motion for summary judgment unless the evidence supporting that defense is so compelling as to establish that no issue of material fact actually exists."). Summary judgment is appropriate only when no genuine issue of material fact remains. See Clark v. Gochenaur, 623 So.2d 561, 562 (Fla. 1st DCA 1993). We review summary judgments de novo. See, e.g., The Fla. Bar v. Rapoport, 845 So.2d 874, 877 (Fla.2003).
"In determining whether issues of fact precluding summary judgment remain, the facts must be taken `in the light most favorable to the non-moving party.'" Carnes v. Fender, 936 So.2d 11, 14 (Fla. 4th DCA 2006) (quoting Turner v. PCR, Inc., 754 So.2d 683, 684 (Fla.2000)). On this basis, we take as true that, in order to help Mr. Trattmann obtain United States' citizenship, Mr. Key negotiated and secured the purchase of the property from a third party, who executed a deed in favor *342 of Mr. Trattmannwho had never set foot in Tallahassee at that point; that Mr. Key provided all of the funds Mr. Trattmann used to purchase the property, including but not limited to a $1000 deposit and cash at closing in the amount of $9,887.30; that Mr. Trattmann and Mr. Key agreed Mr. Key would pay taxes, mortgage expenses, and expenses for maintenance of the property; and that Mr. Key, in fact, made all of the agreed payments, continuously managed and maintained the property, and made substantial improvements to the property, including the installation of new flooring and appliances, all in reliance on Mr. Trattmann's promise to convey the property on demand, that Mr. Trattmann made no payments toward the purchase, maintenance or repair of the property; and that, when Mr. Key demanded that Mr. Trattmann convey the property to him, Mr. Trattmann refused to do so. (While we assume the truth of the foregoing for purposes of decision, these facts were all disputed below.)

II.
The trial court granted the motion for summary judgment and entered the Summary Final Judgment for Defendant, ruling that the defenses of the statute of frauds and the statute of limitations were established and that no issue of material fact existed as to either of them. On the limitations question,[1] the court ruled:
While it is not clear from the complaint precisely when the cause of action accrued, it was surely more than four years ago. If the defendant has made "no payments toward the purchase, maintenance or repair of the [p]roperty," then the cause of action accrued no later than 1998. This action was filed in 2003, more than four years after the cause of action accrued. Thus it is barred.
The trial court rejected, albeit without analysis, Mr. Key's argument that a resulting trust arose, and went on to rule that any action was barred by the statute of frauds because no writing documented the trust, as well as by the statute of limitations, seemingly on account of the passage of time since the third party originally conveyed the property.

III.
A resulting trust arises where an express trust fails, in whole or in part; where the purposes of an express trust are fully accomplished, without exhausting the trust estate; or, of particular pertinence here, "`where a person furnishes money to purchase property in the name of another, *343 with both parties intending at the time that the legal title be held by the named grantee for the benefit of the unnamed purchaser of the property.'" Steigman v. Danese, 502 So.2d 463, 467 (Fla. 1st DCA 1987) (quoting Steinhardt v. Steinhardt, 445 So.2d 352, 357-58 (Fla. 3d DCA 1984)), disapproved of on other grounds by Spohr v. Berryman, 589 So.2d 225, 228-29 (Fla. 1991), and order vacated by In re Estate of Danese, 601 So.2d 570, 571 (Fla. 1st DCA 1992). See also F.J. Holmes Equip., Inc. v. Babcock Bldg. Supply, Inc., 553 So.2d 748, 749 (Fla. 5th DCA 1989) ("A resulting trust may arise in favor of one who furnishes money used to purchase property the legal title to which is taken in the name of another."). A resulting trust can, indeed, be "founded on the presumed intention of the parties that the one furnishing the money should have the beneficial interest, while the other held the title for convenience or for a collateral purpose." Frank v. Eeles, 152 Fla. 869, 13 So.2d 216, 218 (1943) (internal quotation marks and citation omitted). See also Restatement (Third) of Trusts § 7 cmt. c (2003).
While disputed, the facts alleged are sufficient, if proven, to give rise to a resulting trust: Mr. Key alleged and the record does not disprove that he and Mr. Trattmann agreed and intended that Mr. Trattmann would hold title temporarily for Mr. Key's benefit; that Mr. Key supplied all moneys for the purchase, mortgage loan repayment, and maintenance (including repairs) of the property, and was entitled to and did receive the rental income. Mr. Key alleged and the record does not disprove that Mr. Trattmann was holding title to the property for the economic benefit of Mr. Key, and that the only reason the property was put in Mr. Trattmann's name was to help him gain citizenship. See, e.g., Willard Homes, Inc. v. Sanders, 127 So.2d 696, 697 (Fla. 2d DCA 1961) ("It is a settled principle of law . . . that where the purchase money of land is paid by one person and title is taken in the name of another a resulting trust arises and the party taking the title is presumed to hold it in trust for him who pays the purchase price."). Facts that would give rise to a resulting trust have not been disproven here.[2] In these circumstances, entry of summary judgment was error.
The decision in Harnish v. Peele, 386 So.2d 8, 10 (Fla. 5th DCA 1980), is distinguishable. There Peele signed a contract to purchase a building for use as a chiropractor's office, and made a $300 deposit. He had difficulty getting financing, so his sister and her husband, the Harnishes, agreed to acquire the building. They assumed his position under the contract, executed a mortgage, and purchased the building, by paying $8,100 in cash at closing. They took title in their own names, partly to protect themselves from any claims by Peele's ex-wife. Before closing, Peele and the Harnishes agreed that anytime Peele repaid them the money they were out, the Harnishes would deed the *344 property to him. See id. at 9. Thereafter Peele made monthly payments to his sister and brother-in-law in amounts equal to the monthly mortgage payments plus payments due on another loan the Harnishes took out so that Peele could remodel the building.
Subsequently, Peele demanded a deed to the building from the sister and brother-in-law. The trial court found a resulting trust and ordered the Harnishes to convey title to Peele upon his payment of $9,047 plus interest from the time of closing. See id. at 9-10. But the Fifth District reversed, because the Harnishes had only agreed that, if Peele paid them, they would convey the property to him. There was no understanding that the property actually belonged to him. His sister and brother-in-law had paid for the building and obtained legal title. See id. at 10.
There were no terms of repayment. Peele had no binding obligation to pay the Harnishes. He could either pay or not pay the money paid by the Harnishes at his option. Consequently, . . . the agreement between Peele and the Harnishes is too indefinite upon which to bottom a trust.
Id. Peele had the optionunder an oral lease-purchase agreementof determining if, and when, he would purchase the building by paying his sister and brother-in-law the money they had expended to acquire it. Only if he exercised the option would they be obligated to convey the property to him. The Fifth District explained:
There is an additional element required to create a resulting trust which has received little attention in Florida case law. . . . "A resulting trust must arise, if at all, at the instant the deed is taken and legal title vests in grantee. The complaining party must have paid his share of the purchase price, or bound himself to the grantor by an absolute obligation to pay it."
Id. (quoting Womack v. Madison Drug Co., 155 Fla. 335, 20 So.2d 256, 257 (1944)) (emphasis omitted). "There must be more than a privilege reserved in the person claiming the trust relationship to pay or not to pay at his election. There must be a debt which the grantee can enforce." Id. In the present case, Mr. Key has adequately alleged the requisite "additional element" of an absolute obligation dating to the time of purchase in alleging that he supplied all funds for purchase of the property, and that Mr. Trattmann's connection to the property was nothing more than bare legal title.

IV.
The trial court also erred in determining that Mr. Key's purchase-money resulting trust claimin contradistinction to his claim based on an oral contract for the purchase of landwas barred by the statute of frauds. Section 725.01, Florida Statutes (2003), provides:
No action shall be brought . . . upon any contract for the sale of lands . . . or of any uncertain interest in or concerning them, . . . or upon any agreement that is not to be performed within the space of 1 year from the making thereof, . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.
See also § 689.01, Fla. Stat. (2003).[3] The purpose of the statute of frauds is "to *345 intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos," Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So.2d 777, 779 (Fla.1966) (quoting Yates v. Ball, 132 Fla. 132, 181 So. 341, 344 (1937)), and applies here to preclude Mr. Key's oral contract for the sale of land claim.
The statute of frauds does not apply to resulting trusts, however. Because a resulting trust arises not ex contractu but by operation of law, the statute of frauds does not pertain. See, e.g., Williams v. Grogan, 100 So.2d 407, 410 (Fla.1958) ("A trust which is created by operation of law is not within the statute of frauds and may be proved by parol evidence."); Stonely v. Moore, 851 So.2d 905, 906 (Fla. 3d DCA 2003) (reversing summary judgment entered on a claim seeking to establish a resulting or constructive trust where the trial court relied on the statute of frauds, because "`resulting trusts involving real estate can be based on parol evidence'") (quoting Zanakis v. Zanakis, 629 So.2d 181, 183 (Fla. 4th DCA 1993)).
Although a statute provides that all declarations or creations of trusts of land shall be manifested and proved by some writing signed by the party who is by law enabled to create such a trust, no writing is required for the creation of a resulting trust. These statutory provisions (and their occasional counterparts applicable to personal property) apply to express trusts but not to either resulting or constructive trusts. These exceptions were expressly stated in § 8 of the original English Statute of Frauds, 29 Car. II, ch. 3 (1677).
Restatement (Third) of Trusts § 7 cmt. g (2003). A resulting trust "does not spring from a contract but arises by implication of law." Frank, 13 So.2d at 217-18 (internal quotation marks and citation omitted). See Varnes v. Dawkins, 624 So.2d 349, 351 (Fla. 1st DCA 1993) ("[A]n oral agreement to reconvey property is enforceable because the statute of frauds does not apply to trusts arising by operation of law."). The trial court erred in finding that the statute of frauds barred Mr. Key's efforts to enforce a purchase-money resulting trust, because the statute of frauds does not apply to resulting trusts.

V.
Mr. Trattmann had the burden of proof on each affirmative defense. As regards the limitations defense, it was incumbent on him to establish when the statute began running and, since he sought summary judgment, to demonstrate the absence of any dispute about the timing of the breach of the fiduciary duty alleged. But, even though the record does not reveal when Mr. Trattmann initially refused to convey the property (or otherwise acted inconsistently with his putative fiduciary obligations), the trial court ruled that the action was barred by the statute of limitations, finding four years to be the limitations period applicable to an action to enforce *346 a resulting trust.[4]
Applying a statute of limitations to a resulting trust,[5] the Fifth District held that the "beneficiary of a resulting trust is not bound to act until the trustee repudiates the trust or begins to hold the property adversely with knowledge on the part of the beneficiary." Bradbury v. Fuller, 385 So.2d 7, 8 (Fla. 5th DCA 1980). See also Grable v. Nunez, 64 So.2d 154, 160 (Fla. 1953) ("The statutes of limitations do not operate against a resulting trust until the trustee has disclaimed the trust and begins to hold adversely to the beneficial interest."). Thus, assuming the statute of limitations applies, it would not have begun running until Mr. Trattmann refused to convey the property to Mr. Key.
When the action accrued is not apparent on this record. The facts surrounding the issue have yet to be developed. The trial court acknowledged that the date the action accrued was not clear, but peremptorily announced that "it was surely more than four years ago." No evidence in the record explains this pronouncement, which seems to rest on the unsupported notion that the cause of action arose at or about the time of the original purchase. The trial court ignored cash flows from the property and evinced misapprehension of the nature of the cause of action in ruling that, if "the defendant [Trattmann, the putative trustee] has made `no payments toward the purchase [or] maintenance of the [ ] property,' then the cause of action accrued no later than 1998." A trustee is ordinarily under no obligation to augment the trust corpus.

VI.
In sum, the trial court erred in granting summary judgment in favor of Mr. Trattmann because of disputed issues of material fact both on the purchase-money resulting trust claim and on the only possibly viable affirmative defense raised.
The judgment is reversed, and the case is remanded for further proceedings.
BROWNING, C.J., and LEWIS, J., concur.
NOTES
[1] Although Mr. Trattmann raised the affirmative defense of laches in his answer to the complaint, this defense was not ruled on separately by the trial court. Some courts have held that the statute of limitations does not apply to resulting trusts, since "the enforcement of a resulting trust in equity is governed by the doctrine of laches and not by the statute of limitations." Fisher v. Creamer, 332 So.2d 50, 52 (Fla. 3d DCA 1976), superceded by statute on other grounds as explained by Velzy v. Estate of Miller, 502 So.2d 1297, 1299-1301 (Fla. 2d DCA 1987). See also Trustman v. Gelfman, 724 So.2d 1266, 1266 (Fla. 3d DCA 1999) (holding summary judgment proper in a probate action seeking to impose a resulting trust where the action was barred by laches). Some courts have, however, applied the statute of limitations to resulting trusts. See, e.g., Steigman v. Danese, 502 So.2d 463, 470 (Fla. 1st DCA 1987), disapproved of on other grounds by Spohr v. Berryman, 589 So.2d 225, 228-29 (Fla.1991), and order vacated by In re Estate of Danese, 601 So.2d 570, 571 (Fla. 1st DCA 1992) (holding that, if the action seeking a resulting or constructive trust was based on alleged fraud of the other party, the four-year statute of limitations applied). There has been no allegation of fraud here, and we need not decide how the statute of limitations interacts with the doctrine of laches at this point in the proceedings.
[2] Mr. Trattmann did not set up illegality as a defense. The Restatement of Trusts (Third) provides, with an exception not pertinent here that

where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid unless
. . .
(b) the transfer is made to accomplish an unlawful purpose, in which case a resulting trust does not arise if the policy against unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction.
Restatement (Third) of Trusts § 9(1)(b) (2003). Even if illegality had been pleaded, this record would not justify summary judgment on that basis.
[3] Section 689.01, Florida Statutes (2003), provides:

No estate or interest of freehold, or for a term of more than 1 year, or any uncertain interest of, in or out of any messuages, lands, tenements or hereditaments shall be created, made, granted, transferred or released in any other manner than by instrument in writing, signed in the presence of two subscribing witnesses by the party creating, making, granting, conveying, transferring or releasing such estate, interest, or term of more than 1 year, . . .; and no estate or interest, either of freehold, or of term of more than 1 year, or any uncertain interest of, in, to or out of any messuages, lands, tenements or hereditaments, shall be assigned or surrendered unless it be by instrument signed in the presence of two subscribing witnesses by the party so assigning or surrendering. . . .
[4] Section 95.11, Florida Statutes (2003), provides:

Actions other than for recovery of real property shall be commenced as follows:
. . . .
(3) Within four years.
. . . .
(k) A legal or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, and merchandise, and on store accounts.
. . . .
(6) Laches.Laches shall bar any action unless it is commenced within the time provided for legal actions concerning the same subject matter regardless of lack of knowledge by the person sought to be held liable that the person alleging liability would assert his or her rights and whether the person sought to be held liable is injured or prejudiced by the delay. This subsection shall not affect application of laches at an earlier time in accordance with law.
(Typeface altered.)
[5] The rights of beneficiaries of resulting trusts to enforce their rights against the trustee or third persons are subject to the same rules regarding the doctrine of laches and statutes of limitations as apply in the case of express trusts. See § 98, and also compare §§ 96 and 97. The so-called doctrine of merger, which applies to express trusts (see § 69), also applies to resulting trusts.

Restatement (Third) of Trusts § 7 cmt. h (2003). See also supra note 1.