# Third District Court of Appeal

## State of Florida

Opinion filed April 20, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1196
Lower Tribunal No. 15-26339
_____

**Isabel M. Ordway, etc., et al.,**
Appellants/Cross-Appellees,

vs.

**Karibu Properties, Inc., et al.,**
Appellees/Cross-Appellants.

An Appeal from the Circuit Court for Miami-Dade County, Martin Zilber, Judge.

GrayRobinson, P.A., and Jack R. Reiter; Lubell & Rosen LLC, and Norman S. Segall, for appellants/cross-appellees.

Campbell Law Firm PLLC, and Dennis M. Campbell and Tania M. Varela, for appellees/cross-appellants.

Before LOGUE, LINDSEY, and HENDON, JJ.

LOGUE, J.

When distilled to its essence, this matter concerns a dispute regarding the ownership of Karibu Properties, Inc. (hereinafter "Karibu I"), the title owner of a condominium in which Isabel Ordway and her children have resided since 2003 (the "Property"). Appellants Isabel Ordway, individually and as Personal Representative of the Estate of Carl Alexander Ordway, and Karibu II, Ltd. challenge a final judgment rendered in favor of Appellees Karibu I and Marie Blanche Brillembourg, individually and as Personal Representative of the Estate of Elinka Ordway, following a bench trial on claims for ejectment, declaratory relief, and conversion. Appellees cross-appeal the final judgment as it relates to the trial court's determination of damages and other contingent issues.

This case ultimately rises or falls on whether there was a valid inter vivos transfer by gift of the shares of Karibu I from Elinka Ordway to her son Alexander Ordway's company, Karibu II. We conclude that as a matter of law a valid transfer occurred and that Karibu II is the sole owner of the stock of Karibu I. Accordingly, we reverse the final judgment and remand for further proceedings.[1]

---

[1] We recognize that Appellants and Appellees raise additional issues on appeal and cross-appeal, but we decline to reach these issues as moot. Our decision today in the primary ejectment action concerning the ownership of Karibu I renders a declaratory judgment unnecessary, therefore we do not address Appellants' claim of error as to the trial court's ruling regarding

## **Factual and Procedural Background**

Because the parties are familiar with the relevant facts and procedural history of this case, we set out only what is necessary to explain our decision.

Marie Blanche Brillembourg, as personal representative of Elinka Ordway's estate, initiated an ejectment action on behalf of Karibu I against Isabel Ordway to recover possession of the Property. The ejectment action was subsequently amended to include a claim for unjust enrichment relating to property taxes paid on the Property by Elinka and later her estate. In response, Isabel raised an affirmative defense of standing and alleged that the real party in interest directing Karibu I's actions – Elinka's estate and Brillembourg – lacked standing to bring the ejectment action because Elinka did not own Karibu I at the time of her death. Isabel alleged that Elinka transferred all her shares in Karibu I to Karibu II, which was solely owned by Alexander and was therefore now an asset of Alexander's estate.

---

expiration of the statute of limitations in the declaratory judgment action. Appellees' cross-appeal also raises issues pertaining to the declaratory judgment action and the applicability of sections 720.702 and 733.710, Florida Statutes, which we decline to reach on the same basis. Finally, because we reverse the primary finding in the ejectment action regarding ownership of the Property based on Appellant's claim of error, we also decline to reach Appellees' cross-appeal regarding the trial court's failure to award them damages and instead remand for further proceedings consistent with this decision.

3

Karibu II and Isabel subsequently filed an action against Brillembourg, as personal representative of Elinka's estate and individually, alleging a claim of conversion and seeking a declaration that Elinka transferred her interest in Karibu I to Karibu II prior to her death. Brillembourg filed a counterclaim for unjust enrichment and conversion against Isabel and Karibu II.

The ejectment action and the declaratory action were subsequently consolidated and remotely tried together. The testimony and evidence produced at trial established that Karibu I was incorporated exclusively to hold title to the Property, which was purchased in 2003 with funds provided by Elinka. Elinka was listed as the director and sole owner of Karibu I, and its corporate book showed that 100 shares were issued to Elinka under Stock Certificate #1 in February 2006.

Elinka's attorney, William McCaughan, testified (and the parties do not dispute) that Elinka intended to transfer her stock in Karibu I to her son, Alexander Ordway, as a gift. Alexander and Isabel Ordway married in 2002 and had been living in the Property with their children since its purchase and renovation in 2003. In November 2006, Alexander incorporated Karibu II in the British Virgin Islands ("BVI") for the purpose of holding the stock of Karibu I. Elinka thereafter instructed McCaughan to prepare Stock Certificate #2 for

4

100 shares to be issued to Karibu II and returned Stock Certificate #1 to him. McCaughan sent Stock Certificate #2 to Elinka for signature, noting as such in the stock transfer ledger ("Sent to Elinka to transfer to Karibu II"), and kept Stock Certificate #1 in the corporate book for Karibu I.

In 2007, Alexander and Elinka advised McCaughan that Stock Certificate #2 had been lost. This was documented by a written note in the stock transfer ledger, "Certificate never returned to us." McCaughan then prepared Stock Certificate #3 as a replacement and sent it to Elinka for signature. This was also recorded in the stock transfer ledger via written note dated October 31, 2007 stating, "Sent to Elinka to replace Cert. #2." Along with this note, under the column titled "To Whom Shares Are Transferred," was the entry "Karibu II, Ltd."

In September 2008, Alexander unexpectedly passed away. Thereafter, Elinka realized she had executed Stock Certificate #3 but never delivered it to Alexander and returned Stock Certificate #3 to McCaughan. He voided the executed Stock Certificate #3 per Elinka's instructions, and also voided an unsigned copy of Stock Certificate #2 in the corporate book since the original Stock Certificate #2 had purportedly been previously lost. Isabel testified, however, that sometime in the latter part of 2013 she discovered the original

Stock Certificate #2 signed by Elinka in Alexander's personal papers located at the Property.

The trial court ultimately found in its Final Judgment, in pertinent part, that Elinka and her estate had "always" owned Karibu I. In support of this finding, the trial court emphasized that Elinka, during her lifetime and her estate thereafter, paid property taxes on the Property through Karibu I and paid estate taxes on the value of the Property held by Karibu I. Alexander and Isabel never paid any taxes on the Property or maintained the corporate status of Karibu I or Karibu II in the BVI after its formation. The trial court further noted that Elinka never filed a gift tax return for the purported stock transfer from Karibu I to Karibu II and in all her federal tax returns Elinka was listed as the sole shareholder of Karibu I.

As for the disputed stock transfer, the trial court concluded that "while Elinka expressed her intent to transfer the stock in Karibu I to Karibu II, the transfer was never completed" because "Stock Certificate #2 was never properly issued or legally transferred[,]" reasoning that "none of the steps required by Florida corporate law to transfer stock from one shareholder to a new shareholder were ever undertaken or accomplished." As a result, the trial court granted Karibu I and Elinka's estate's request to eject Isabel from

6

the Property pursuant to its finding that Karibu I was the sole owner of the Property.

This appeal timely followed.

## Discussion

"We review a judgment rendered after a bench trial to ensure that the trial court's findings of fact are supported by competent, substantial evidence. Pure legal conclusions are reviewed de novo." Sg 2901, LLC v. Complimenti, Inc., 323 So. 3d 804, 806 (Fla. 3d DCA 2021) (internal citations omitted).

The issue at the heart of the parties' dispute is who is entitled to own and possess the Property. This is reflected in the original underlying action that began this litigation—the ejectment action brought by Brillembourg on behalf of Karibu I to eject Isabel from the Property. In response, Isabel placed the ownership of Karibu I at issue by questioning whether Elinka's estate and Brillembourg, the real parties in interest directing Karibu I's actions, had the authority to bring the ejectment action because, Isabel alleged, Elinka transferred all her shares in Karibu I to Karibu II prior to her death and therefore did not own Karibu I at the time of her death.

"Whether a given transaction constitutes a gift inter vivos is, of course, a question of law." Lowry v. Fla. Nat. Bank of Jacksonville, 42 So. 2d 368,

7

370 (Fla. 1949). "[A]n inter vivos transfer by gift of any interest in securities is accomplished by either actual or constructive delivery of the same, where donative intent is also present, and where acceptance by the donee may be presumed or is proven directly." Tanner v. Robinson, 411 So. 2d 240, 242 (Fla. 3d DCA 1982). Florida courts also recognize "a presumption of a gift as a result of [the donee's] name appearing on the subject stock certificate." Mercurio v. Urban, 552 So. 2d 236, 237 (Fla. 4th DCA 1989).

Here, the evidence presented at trial clearly showed, and the trial court properly found, that donative intent was established. Elinka undisputedly intended to transfer her 100 shares in Karibu I to her son's company, Karibu II, by way of Stock Certificate #2, as a gift. McCaughan testified he was instructed by Elinka to issue Stock Certificate #2 to Karibu II, which he did and then sent to Elinka for signature. Mr. McCaughan also recorded Stock Certificate #2 in the stock transfer ledger of Karibu I with the note, "Sent to Elinka for transfer to Karibu II."

Furthermore, actual delivery of Stock Certificate #2, signed by Elinka, was shown and acceptance by Alexander may be presumed based on the undisputed testimony and evidence that the original, executed Stock Certificate #2 was found among Alexander's personal papers a few years after his death. These facts, showing donative intent and delivery by Elinka

8

and acceptance by Alexander, are consistent with a valid inter vivos gift under Florida law. At that point, the gift was completed and Alexander's company, Karibu II, became the sole owner of the 100 shares in Karibu I.

The fact that Stock Certificate #2 was later misplaced does not alter this legal conclusion. Indeed, the actions taken after Stock Certificate #2 was misplaced further support the undisputed conclusion that Elinka remained intent on gifting the shares in Karibu I to her son. Once Stock Certificate #2 went missing, sometime in October 2007, Elinka and Alexander informed Mr. McCaughan and instructed him to issue Stock Certificate #3 as a replacement for Stock Certificate #2, which was reflected in the stock transfer ledger under the note, "Sent to Elinka to replace Cert #2."

While the testimony and evidence indicated that Stock Certificate #3 was never delivered to, or physically possessed by, Alexander prior to his death and that Elinka decided against the transfer, returning Stock Certificate #3 to Mr. McCaughan and instructing him to void it, this is irrelevant. When Stock Certificate #2 was signed and delivered by Elinka to Alexander and thereafter accepted and retained by Alexander in his personal papers, the inter vivos transfer by gift of Elinka's interest in Karibu I to Karibu II was accomplished and became irrevocable. See, e.g., Leonard v. Campbell, 189 So. 839, 840 (Fla. 1939) (recognizing irrevocability of inter vivos gift). The

9

subsequent misplacement of Stock Certificate #2, issuance of Stock Certificate #3 to replace it, and then voiding of Stock Certificate #3 after Alexander's death does not alter this, as Elinka no longer had the ability to change her mind and revoke the gift.

The trial court improperly placed too great an emphasis on the lack of compliance with corporate formalities for the transfer of stock in reaching its conclusion regarding the ownership of Karibu I. As this Court previously explained in Tanner, 411 So. 2d at 242, such provisions "are not exclusive and do not undercut the validity of a gift of securities which is otherwise effective under common law standards." Therefore, contrary to the trial court's conclusions of law, Elinka's failure to write "void" on Stock Certificate #1 or to execute a stock power or other documents proving the transfer occurred, or even her failure to file a gift tax return after issuing and delivering Stock Certificate #2 to Alexander does not negate that a valid inter vivos transfer by gift of the shares in Karibu I to Karibu II was accomplished.

Accordingly, the trial court erred when it concluded as a matter of law that Stock Certificate #2 did not legally transfer the stock of Karibu I to Karibu II. We hold a valid inter vivos transfer by gift was accomplished via Stock Certificate #2 and Karibu II is now the sole owner of the 100 shares of Karibu

10

I. We therefore reverse the trial court's final judgment in its entirety and remand for further proceedings consistent with this decision.

Reversed and remanded for further proceedings.